# CASES DETERMINED

## IN THE

# SUPREME COURT

### OF THE

## STATE OF MISSOURI

#### AT THE

### APRIL TERM, 1910.

---

*(Continued from Volume 229)*

---

## THE STATE v. CHARLES H. MARTIN, Appellant.

### Division Two, June 30, 1910.

1. **PLEA IN ABATEMENT.** A plea alleging that the counts in the indictment are violative of certain provisions of the Constitution (pointing them out), and that by reason of the violation of said provisions the indictment should be quashed and the prosecution abated, is not a plea in abatement, if not supported by affidavit or some other evidence, and cannot be entertained as such.

2. **DEMURRER: Not Preserved in Record.** If such paper be considered a demurrer, it cannot be considered on appeal unless preserved as a part of the record proper. To preserve it in the bill of exceptions only is not sufficient.

3. **APPELLATE JURISDICTION: Constitutional Question: How Raised: Motion for New Trial.** Although a demurrer denouncing the statutes and the indictment based thereon as violative of certain provisions of the Constitution cannot be considered on appeal, because not preserved as a part of the record proper,

State v. Martin.

yet where the case was submitted on an agreed statement of facts from which it appears that the only issue is whether or not, under the Constitution, defendant can be convicted of a misdemeanor for selling non-intoxicating beer containing less than one-half per cent alcohol, the constitutional question may be raised in the motions for a new trial and in arrest.

4. **LOCAL OPTION: Sale of Non-Intoxicating Beverages.** It is illegal to sell as a beverage liquors containing alcohol in any quantity in any county in this State unless the seller has a license as a dramshop keeper.

5. ————: ————: **Meaning of Intoxicating Liquor.** The words "intoxicating liquor" as used in the Local Option Law, were used in the same sense in which they had long been and are yet used and defined in the general Dramshop Law; and under that law no one can sell liquors containing less than one-half per cent alcohol unless he has a license authorizing him to sell; and the legal effect of the Local Option Law, when adopted by the people, is to suspend all sales in the county or city under the general Dramshop Law. That law having been legally adopted, beers containing alcohol in any quantity cannot be legally sold as a beverage.

6. ————: ————: **Non-Intoxicating as a Fact.** The statute having declared that "the term 'intoxicating liquor' shall be construed to mean fermented, vinous or spirituous liquors, or any composition of which fermented, vinous or spirituous liquor is a part," and also prohibiting, where the Local Option Law has been adopted, the sale of any "beverage containing alcohol, in any quantity whatever," it is wholly immaterial whether or not "a beverage containing less than one-half per cent of alcohol" is or is not, in point of fact, intoxicating. The statute furnishes the definition, and declares any composition containing alcohol, when sold as a beverage, is "intoxicating" in the sense the word is used in the Local Option and general Dramshop Law.

7. ————: **Title to Act.** The title of the Local Option Law, namely, "An Act to provide for the preventing of the evils of intemperance by local option in any county, . . . by submitting the question of prohibiting the sale of intoxicating liquors to the qualified voters," etc., embraced the sale of any beverage containing alcohol in any quantity whatever, since the statute long prior thereto, in defining the words "intoxicating liquors," had declared any composition containing alcohol when sold as a beverage to be an "intoxicating liquor."

8. ————: **Indictment: Intoxicating Liquor.** It is not essential that the indictment should, in so many words, charge that the beverage sold was "an intoxicating liquor," or that defendant

"sold intoxicating liquor." If it charge and designate the ingredients the composition sold as a beverage contained, and the component parts make it an intoxicating liquor, that is a sufficient charge of a sale of an intoxicating beverage or liquor.

9. ———: ———: **Two Counts: General Finding.** Where the agreed statement of facts makes it apparent that only one offense was submitted to the court, a general finding of guilty will not work a reversal, although the indictment contained two counts.

10. **PRACTICE: No Instructions.** A failure by the court to give any instructions in a criminal case, submitted to the court on an agreed statement of facts, none being requested, is not error.

11. **LOCAL OPTION; Agreed Statement: Non-Intoxicating Beverage: Finding.** Where the agreed statement of facts says defendant sold "a non-intoxicating beverage," and then proceeds to recite that "the substance was sold for a beverage, and said beverage contained some alcohol," the court was fully justified, though the statement was somewhat inconsistent, in finding that the substance was an "intoxicating liquor," as these words are defined by the statute.

Appeal from DeKalb Circuit Court.—*Hon. Alonzo D. Burnes,* Judge.

AFFIRMED.

*W. M. Fitch* for appellant.

(1) The second count of the indictment charges no offense under the laws of this State, because Sec. 3032, R. S. 1899, is unconstitutional and void in this: It is in contravention of section 28 of article 4 of the Constitution, in that the bill enacting said section 3032 was leveled at intoxicating liquors, and not against a non-intoxicating beverage; therefore so much of said section as prohibits the sale of a non-intoxicating beverage is void and of no force. State v. Fulks, 207 Mo. 26; State v. Coffee Co., 171 Mo. 634; Witzmann v. Railroad, 131 Mo. 616; St. Louis v. Weitzel, 130 Mo. 616; State ex rel. v. Scofield, 41 Mo. 39; State v. Persinger, 76 Mo. 346; People v. Beadle, 60 Mich. 22; Comm. v. Doll, 6 Pa. Co. Ct. Rep.

49; Comm. v. Carey, 151 Pa. St. 368; Albrecht v. People, 78 Ill. 510; Miller v. Jones, 80 Ala. 89; State v. Young, 47 Ind. 150; People v. Bird, 138 Mich. 31; State v. Barrett, 27 Kas. 213. (2) So much of section 3032 as prohibits one from giving away intoxicating liquors in good faith is unconstitutional. State v. Fulks, 207 Mo. 26. (3) The indictment was in two counts; there was a general finding of guilty, followed finally by a general judgment, and neither finding nor judgment specified on which count the finding and judgment were based. The defendant had a right to know this; it was brought up in the motion for a new trial. This was error. State v. Pitts, 58 Mo. 556; State v. Pierce, 136 Mo. 34; State v. Harman, 106 Mo. 635; State v. Hudson, 137 Mo. 618; State v. Karlowski, 142 Mo. 463; State v. Burke, 151 Mo. 136; State v. Rowe, 142 Mo. 439; State v. Jones, 168 Mo. 398; 12 Cyc. 692-695. (4) The second count of the indictment does not allege that the beverage sold was intoxicating. It is therefore not sufficient to charge defendant with an offense under the Local Option Law. State v. Houts, 36 Mo. App. 273. The Local Option Law does not prohibit the sale of a non-intoxicating liquor. R. S. 1899, secs. 3027-35. Section 3027 provides for an election "to determine whether or not spirituous and intoxicating liquors, including wine and beer, shall be sold within the limits of such county," etc. Section 3030 provides the form of ballot for local option elections: "For the sale of intoxicating liquors," and "Against the sale of intoxicating liquors." Section 3031 follows this idea by providing that if a majority of the votes shall be "For the sale of intoxicating liquors," the general laws shall be in force; but if "Against the sale of intoxicating liquors," then publication, etc., shall be made. Section 3032 provides that "if a majority of the votes shall be 'against the sale of intoxicating liquors,' it shall not be lawful for any person within the limits of such county to directly or indirectly sell,

give away or barter in any manner whatever any kind of intoxicating liquors, or beverages containing alcohol, in .any quantity whatever.'' The enacting clause of the Local Option Law is to prohibit ''the sale of intoxicating liquors.'' Therefore, it was never the intention of the Legislature, in enacting the Local Option Law, to prohibit the sale of a non-intoxicating beverage. (5) The indictment was fatally defective in failing to allege that said temperance beer was an intoxicating beverage. When ''beer'' is used alone, without qualification, it is said to mean an intoxicating beverage. State v. Houts, 36 Mo. App. 265; State v. Effinger, 44 Mo. App. 81; State v. Besheer, 69 Mo. App. 75. The conviction of defendant was erroneous because it is admitted by the evidence that temperance beer, mentioned in the indictment, was not intoxicating. (6) The court should have given instructions in this case whether requested or not; his failure therein is error. R. S. 1899, sec. 2627; Laws 1901, p. 140, subdiv. 4; State v. Banks, 73 Mo. 592; State v. Palmer, 88 Mo. 568; State v.Gregory,178 Mo.48. (7) The Local Option Law is supplemental to the Dramshop Law, and is *in pari materia* with it, and they should be considered together in construing the Local Option Law. State v. Wingfield, 115 Mo. 440; State ex rel. v. Slover, 126 Mo. 652; Bank v. Heywood, 62 Mo. 556; Ross v. Railroad, 111 Mo. 18; Kane v. Railroad, 112 Mo. 34; 26 Am. and Eng. Ency. Law (2 Ed.), p. 616, note 1.

*Elliott W. Major*, Attorney-General, and *John M. Atkinson*, Assistant Attorney-General, for the State.

(1) The question for consideration, in a nut-shell, is what did the Legislature mean to include in the term ''intoxicating liquors'' as used in the title to said Local Option Act? If the term ''intoxicating liquors'' is broad enough to and does include all ''beverage containing alcohol, in any quantity whatever,'' whether

intoxicating or non-intoxicating, then appellant's objection to the sufficiency of said title is without merit. At the date of the passage of said Local Option Act in 1887, the dramshop laws of this State which were then in force, defined the term "intoxicating liquors" as follows: "The term 'intoxicating liquor,' as used in this chapter, shall be construed to mean fermented, vinous and spirituous liquors, or any composition of which fermented, vinous or spirituous liquors is a part, and all the foregoing provisions shall be liberally construed as remedial in their character." R. S. 1879, sec. 5161. This definition of "intoxicating liquors" was first adopted in this State in the year 1855, and has remained the law of this State since. R. S. 1855, p. 688, secs. 31, 32; R. S. 1879, sec. 5461; R. S. 1889, sec. 4595; R. S. 1899, sec. 3016. The phrase appearing in said section 5461, "or any composition of which fermented, vinous or spirituous liquors is a part," certainly is included in the inhibition of Sec. 3032, R. S. 1899, sec. 6, of Local Option Act, prohibiting any sale or gift of "any kind of intoxicating liquors or beverage containing alcohol, in any quantity whatever." At the time of the passage of the Local Option Act in 1887, no person was permitted, under the provisions of the dramshop laws then in force (and now), to sell "any composition of which fermented, vinous or spirituous liquors is a part," without first taking out a license as a dramshop keeper. If such "composition" contain the least per cent. of fermented, vinous or spirituous liquors, whether intoxicating or non-intoxicating, it came under the ban and could not be legally sold except by a dramshop keeper. R. S. 1879, sec. 5461; R. S. 1899, sec. 3016. In the passage of the Local Option Act, it was certainly the intent of the Legislature to provide a law whereby the people by the required vote might prohibit altogether the sale of "intoxicating liquors," as was then permitted under the dramshop laws, and the title of the act was

doubtless so understood by the members voting for the Local Option Act. State ex rel. v. County Court, 102 Mo. 537; State v. Bengsch, 170 Mo. 106; State v. Cantwell, 179 Mo. 260. In construing the title to the Local Option Act, the court should give the term "intoxicating liquors" a liberal construction and such as it was understood to mean in the dramshop laws then in force in this State. State v. Intoxicating Liquors, 76 Ia. 245. (2) The appellant treated the two counts as charging but a single offense. It would be manifestly unfair to the trial court now to permit appellant to urge that the two counts in the indictment charge more than one offense, the unlawful sale of one quart of beer. Where all the counts in an indictment relate to the same transaction, and charge but a single offense, a general verdict of guilty is proper. State v. Stewart, 90 Mo. 507; State v. Van Waye, 136 Mo. 227; State v. Schmidt, 137 Mo. 266; State v. Bedell, 35 Mo. App. 551; State v. Pitts, 58 Mo. 556; State v. McDonald, 85 Mo. 539; State v. Noland, 111 Mo. 473. Appellant, by submitting this case on the agreed statement of facts, and treating both counts as charging but a single offense, waived any right, if he had such a right, to have a separate finding on each count. State v. Spurgeon, 102 Mo. App. 34.

FOX, J.—On October 20, 1908, the grand jury of DeKalb county duly returned an indictment in two counts, charging appellant with a violation of the Local Option Law of this State. The first count of said indictment charged that appellant "did then and there unlawfully sell one quart of beer" on August 12, 1908, for the price and sum of twenty-five cents, contrary to the provisions of the statute in such cases made and provided, and against the peace and dignity of the State. The second count of said indictment charged that appellant "did then and there sell a fermented, malt beverage containing alcohol, to-wit, one quart

of temperance beer, a fermented and malted beverage, containing alcohol, '' on August 12, 1908, for the price and sum of twenty-five cents, contrary to the provisions of the statutes in such cases made and provided and against the peace and dignity of the State.

Appellant challenged the sufficiency of said indictment, by what he denominated a ''plea in abatement, or demurrer,'' which the court overruled.

This cause was submitted to the court on the following agreed statement of facts:

''AGREED STATEMENT OF FACTS.

''It is agreed that this case may be submitted and tried on the following facts as evidence.

''1st. That on or about the 12th day of October, 1907, an act of the Legislature of the State of Missouri, approved 1887, commonly known as Local Option Law, and being article 3, chapter 22, Revised Statutes of Missouri 1899, was duly and legally adopted in said county, and was thereafter in full force and effect in said county.

''2d. That said county contained no town with a population of twenty-five hundred inhabitants.

''3d. That afterwards, on or about the 12th day of August, 1908, the defendant, Charles H. Martin, at and in DeKalb county, Missouri, did sell one quart of a certain non-intoxicating beverage known as 'Temperance Beer,' and bearing the following label: 'Temperance Beer. Non-intoxicant. Brewed from Malt and Hops. Contains less than one-half per cent of alcohol in volume. Guaranteed under the Pure Food and Drugs Act, Serial Number 8650. Brewed and bottled by M. K. Goetz Brewing Co., St. Joseph, Mo.,' to Howard Wilson, Jr., for the sum of 25 cents of lawful money of the United States.

''4th. It is further admitted that the substance sold was the same substance described in the above

label, and was sold for a beverage, and that said beverage contained some alcohol at the time of said sale in the following quantities: By weight it contained 32-100 of one per cent, and by volume it contained 40-100 of one per cent.

"5th. It is further admitted that the United States Government does not require a license for the manufacture or sale of a beverage that contains no more than one-half per cent by volume, and that such beverages do not come within the internal revenue laws of the United States, either as to the sale or manufacture. Said sale was not made for scientific or sacramental purposes and was not under a dramshop license nor on a prescription, and defendant is not a physician.

"It is agreed that the foregoing is all of the evidence in the case.

"EDWARD G. ROBISON,
Prosecuting Attorney.
"W. M. FITCH,
Attorney for Defendant."

The court rendered a general verdict, finding defendant guilty as charged, and assessed his punishment at a fine of three hundred dollars.

Appellant thereafter filed timely motions for new trial and in arrest of judgment, both of which were overruled. Judgment was rendered in accordance with the finding of the court and from this judgment defendant prosecutes this appeal, and the record is now before us for consideration.

## OPINION.

### I.

The record in this cause discloses the filing by defendant of what is termed a plea in abatement. This plea is in fact not a plea in abatement. The numerous grounds alleged in this so-called plea are directed at

the insufficiency of the indictment. The grounds alleged substantially charge that the respective counts in the indictment are violative of certain provisions (pointing them out) of the Constitution of this State, and by reason of the violation of such constitutional provisions charged in the so-called plea in abatement, the defendant says that the indictment should be quashed and the prosecution abated. It manifestly is not a plea in abatement as contemplated by the provisions of section 2563, Revised Statutes 1899, wherein it is provided that "no plea in abatement or other dilatory plea to an indictment or information shall be received by any court, unless the party offering such plea shall prove the truth thereof by affidavit or some other evidence."

We have reached the conclusion that this plea cannot be treated by this court as a plea in abatement. If it is to be considered as a demurrer to the indictment, then we are confronted with the question as to whether or not it has been properly preserved by the record before us for consideration. Section 596, Revised Statutes 1899, Ann. St. 1906, p. 622, recognizes a demurrer as a pleading; hence it follows that it should be made a part of the record proper. As a demurrer this plea was not made a part of the record proper and its preservation in the bill of exceptions is insufficient to preserve it for review in the appellate court. This proposition was, in the recent case of State v. Earll, 225 Mo. 537, fully reviewed by BURGESS, J., and the conclusion reached after a clear and exhaustive discussion of the proposition was as heretofore indicated.

## II.

At the very inception of the consideration of this cause we are confronted with the suggestion by the learned Attorney-General that this court has no jurisdiction of this cause, it being a misdemeanor, and that

no constitutional question was raised and properly preserved in the trial and disposition of the cause.

It is sufficient to say respecting that suggestion that while as indicated in the first paragraph of this opinion the so-called plea in abatement or demurrer which sought to raise certain constitutional questions is not before us for review, yet we have reached the conclusion that as applicable to the questions involved in this cause, and upon the agreed statement of facts upon which this cause was submitted to the court, learned counsel could preserve for review the constitutional question to which he has directed our attention, in the motion for new trial and in arrest of judgment. Having fully presented this question to the trial court in his motion for new trial and in arrest of judgment, we will assume jurisdiction of the cause in this court and dispose of the legal propositions confronting us.

## III.

The leading and controlling proposition disclosed by the record in this cause is the one challenging the constitutionality of that portion of section 3032, Revised Statutes 1899, which prohibits the sale of any "beverage containing alcohol, in any quantity whatever." It is earnestly insisted by learned counsel for appellant that the provision of section 3032, as above designated, is unconstitutional and void, being violative of and in contravention of section 28 of article 4 of the Constitution of this State. That constitutional provision, as applicable to the proposition now under consideration, declares that "no bill . . . shall contain more than one subject, which shall be clearly expressed in its title."

That we may fully appreciate the proposition which has been so ably presented in the brief, as well as in oral argument, by learned counsel for appellant,

it is well to keep in mind the enacting clause to which the argument of counsel for appellant is principally directed. The enacting clause of the Local Option Law (Laws 1887, p. 179) is as follows: "An act to provide for the preventing of the evils of intemperance by local option in any county in this State, and in cities of twenty-five hundred inhabitants or more, by submitting the question of prohibiting the sale of intoxicating liquors to the qualified voters of such county or city; to provide penalties for its violation and for other purposes."

In the third and fourth paragraphs of the agreed statement of facts it is admitted that the defendant "did sell one quart of a certain non-intoxicating beverage known as 'Temperance Beer,' and bearing the following label: 'Temperance Beer. Non-intoxicant,'" and that it was sold as a beverage, and that said beverage contained alcohol "at the time of said sale in the following quantities: By weight it contained thirty-two hundred of one per cent, and by volume it contained forty hundredths of one per cent." Upon these statements embraced in the agreed statement of facts counsel for appellant insists that the prohibition of selling a *beverage containing alcohol in any quantity whatever,* is not embraced in the subject of the title of the act, and is therefore violative of the provisions of section 28 of article 4 of the Constitution of this State. In other words, the insistence of appellant is that the Local Option Law was leveled at the sale of intoxicating beverages, and was not intended to prohibit the sale of beverages of the nature and character designated in this proceeding, which contain less than one-half of one per cent of alcohol, and that the subject as expressed in the title, "submitting the question of prohibiting the sale of intoxicating liquors to the qualified voters of such county or city; to provide penalties for its violation and for other purposes," does not embrace beverages of the nature and charac-

ter in judgment before us, which contain less than one-half of one per cent of alcohol.

At the very threshold of the treatment of this proposition it is highly important that we do not lose sight of the state of the law respecting the sale of intoxicating liquors at the date of the enactment of the Local Option Law in 1887. At the date of the passage of the Local Option Act of 1887 we had in this State, as we now have, a general Dramshop Law, which made full provision for the obtaining of a license as a dramshop keeper to dispense intoxicating drinks. No person was permitted, directly or indirectly, to sell intoxicating liquors in any quantity less than three gallons, either at retail or in the original package, without taking out a license as a dramshop keeper. The lawmakers of this State, to the end that there should be no misunderstanding as to what was meant by "intoxicating liquor," defined the term intoxicating liquor in this way: "The term 'intoxicating liquor,' as used in this chapter, shall be construed to mean fermented, vinous and spirituous liquors, or any composition of which fermented, vinous or spirituous liquors is a part, and all the foregoing provisions shall be liberally construed as remedial in their character."

The Legislature of this State when approaching the passage of the Local Option Act of 1887 were fully cognizant of the then existing general law providing for the sale of intoxicating liquors by dramshop keepers; this being true, we see no escape from the conclusion that the intention of the Legislature, in the passage of the Local Option Act, was to afford the people in their respective counties and cities an opportunity at an election duly called, of passing upon the question as to whether or not intoxicating liquors should be sold. In other words, it was to furnish an opportunity to the people to say whether or not intoxicating liquors should longer be sold under the provisions of the law in existence at the time of the sub-

mission of the question to the voters in the respective counties and cities.

In oral argument, as well as in the brief, in support of the contention of appellant, it is said that "before the Local Option Law was adopted, one was at liberty to sell any beverage in this State which was not intoxicating, even though such beverage may contain some alcohol. But after the adoption of the Local Option Law, if it is to have the construction placed upon it by the learned trial court in this case, then it becomes a misdemeanor for one to sell a beverage which contains less than one-half of one per cent of alcohol." Obviously this is a misconception of the result to be deduced from the holding of the learned trial judge in this cause. The general Dramshop Law regulating the sale of intoxicating liquors recognized that any composition of which alcohol formed a part, was an intoxicating liquor, and this was true regardless of the percentage of alcohol forming the part of the composition; hence, it follows that, under the general Dramshop Law in existence at the time of the adoption of the Local Option Act involved in this proceeding, any composition of which any amount of alcohol whatever formed a part was treated as an intoxicating liquor and its sale prohibited, except upon the obtaining of a license as a dramshop keeper for the purpose of making such sale. Therefore, prior to the adoption of the Local Option Law any person selling as a beverage any composition of which any alcohol whatever formed a part, was guilty of a misdemeanor, unless it should be made to appear that he was duly licensed as a dramshop keeper authorized to sell such beverage. Therefore, if the insistence of the learned counsel for appellant is to be maintained, it would result in the following novel application of the law in the respective counties in this State, that is to say, in a county that had not adopted the Local Option Law any person who should sell a composition of which any

alcohol whatever formed a part would be treated as selling intoxicating liquor and subjected to a penalty for the commission of a misdemeanor (provided of course he did not have a license as a dramshop keeper); in any county that adopted the Local Option Law persons might sell any sort of a composition as a beverage if it contained less than one-half of one per cent of alcohol.

Directing our attention to the definition of "intoxicating liquor," as contained in the general Dramshop Law, it is insisted that that definition has no application to the Local Option Act. Responding to this insistence it is sufficient to say that while that may be true in a sense, for the reason that they are separate and independent acts, but it is conceded in the brief of counsel for appellant that the Local Option Law is supplemental to the Dramshop Law, and is *in pari materia* with it, and they should be considered together in construing the Local Option Law. Hence, it follows that it is equally true that the lawmaking power in the adoption of the Local Option Act had in mind the provisions of the general Dramshop Law which in express terms defined what should be construed to be intoxicating liquor. The definition of "intoxicating liquor" as contained in the statute at this date, was first adopted by the General Assembly in the year 1855, and has remained in full force as the law of this State from that date to the present time. In our opinion, the General Assembly in the adoption of the Local Option Act of 1887, in the employment of the terms "intoxicating liquor," had in contemplation intoxicating liquor as defined by the general Dramshop Law, and such act was leveled at the evils of intemperance which might result from the sale of intoxicating liquor in the manner provided by the general Dramshop Law. The provisions of section 3031 of the Local Option Act clearly emphasize the correctness of this conclusion. It in substance provides that if a

majority of the votes cast at such election be for the sale of intoxicating liquors, such intoxicating liquors may be sold under the provisions of existing laws regulating the sale thereof, and if a majority of the votes cast at such election be against the sale of intoxicating liquors then no license to sell intoxicating liquors shall be granted as provided for by the general Dramshop Law of this State. In other words, if a majority of the votes are cast in favor of intoxicating liquors then such intoxicating liquors as defined by the general Dramshop Law may be sold under the provisions of that law, but on the other hand if a majority of the votes cast are against the sale of intoxicating liquors then such intoxicating liquors as defined by the general Dramshop Law cannot be sold.

Manifestly, as heretofore stated, the General Assembly in the enactment of the Local Option Law, had specially in view the provision authorizing the sale of intoxicating liquors under the general Dramshop Law.

In arriving at the conclusion upon this proposition, as herein indicated, we have not been unmindful of the authorities to which our attention has been directed by counsel for appellant. In fact we fully recognize that the proposition confronting us in this case has been presented in its strongest light and about everything has been said in assailing the constitutionality of the provisions of section 3032 that can be said; however, at last the correct solution of this proposition and the true intention of the Legislature enacting the Local Option Law which is assailed, must be sought by a consideration of the legislation concerning the subject in hand, that is, the sale of intoxicating liquors.

The provisions of section 3031 of the Local Option Act of 1887 in effect provide that the voters at the local option election pass upon the question as to whether in the county or city where the question is

submitted to the voters the Dramshop Law shall be continued in force, or whether the right to sell intoxicating liquors under the provisions of the Dramshop Law should be denied to all persons. Manifestly the intoxicating liquors mentioned in that section have reference to intoxicating liquors as defined under the general Dramshop Law for the reason that the section in plain terms says that if a majority of the votes cast at such election be for the sale of intoxicating liquors such intoxicating liquors may be sold under the provisions of existing laws regulating the sale thereof and the procuring of licenses for that purpose. It follows from this and it must be so held that the Legislature of this State in the adoption of the Local Option Law treated the terms "intoxicating liquor," and so understood such terms, to mean intoxicating liquor as defined by the general Dramshop Law.

The law of this State having definitely determined as to what the terms "intoxicating liquor" should be construed to mean, it follows that it is not permissible, and there is no necessity for so doing, to examine into the actual intoxicating properties of the composition sold as a beverage which contains any alcohol whatever. This conclusion finds support in Black on Intoxicating Liquors (section 2), which states the rule in this language: "The meaning of this term is in some instances prescribed in the statute itself. And when that is the case, there is no room for further inquiry into its scope, nor are the courts called upon to construe it. Neither, in the face of a statutory definition, is it permissible to examine into the actual intoxicating properties of any liquor named or indicated in the law. Thus, if the law provides that the term shall be construed to mean alcohol, wine, beer, spirituous, vinous, and malt liquors, and all intoxicating liquors whatever, a beverage containing alcohol is an intoxicant, regardless of whether the quantity of alcohol

contained in it is or is not, of itself, intoxicating.'' A similar rule was announced in State v. Intoxicating Liquors, 76 Ia. l. c. 245. The Supreme Court of that State in discussing this proposition very clearly stated the rule and said: ''The statute provides that the words 'intoxicating liquors,' as used therein 'shall be construed to mean alcohol, wine, beer, spirituous, vinous and malt liquors, and all intoxicating liquors whatever.' Alcohol is therefore an intoxicating liquor, regardless of the fact that the quantity drunk at any one time would not have that effect. It is immaterial, in a statutory sense, what effect alcohol may have on the human system; it is an intoxicating liquor. However much it may be diluted, it must remain an intoxicant when used as a beverage. That is to say, the statute provides that alcohol is an intoxicant whenever and however used as a beverage; and no matter how it may be diluted or disguised, it so remains, simply because the statute so declares. The liquor in question contained alcohol, and therefore it, as a matter of law, was intoxicating.''

Entertaining the views upon this proposition to which we have given expression, our conclusion is that the term ''intoxicating liquor'' as employed in the title of the act necessarily embraced any beverage containing alcohol in any quantity whatever. Doubtless the central idea in the minds of the lawmakers when defining intoxicating liquor and in avoiding the dealing with any percentages of alcohol in compositions in order to make them an intoxicating liquor, and simply making compositions sold as a beverage containing any alcohol whatever an intoxicating liquor, was to prevent the facilities for violating the laws of this State regulating the sale of intoxicating liquors. Manifestly the Legislature deemed it best to definitely state what should be termed and treated as intoxicating liquors, rather than to leave that subject to be determined by experts in the numerous prosecutions by

the State, which would have necessarily arisen had the General Assembly failed to have definitely settled as to what should constitute intoxicating liquors. We are unwilling, in view of the legislation in this State upon the subject of the sale of intoxicating liquors, to hold that there must at least be one-half of one per cent of alcohol in the composition sold as a beverage in order for it to be termed "intoxicating liquor" under the provisions of the Local Option Act. To so hold would give rise to hundreds of prosecutions by the State for the violation of the liquor laws and furnish a field for the display of the knowledge of the expert, both as to the amount of alcohol contained in the composition sold as a beverage and as to whether or not the beverage was in fact intoxicating. The ruling upon this proposition must be adverse to the appellant.

## IV.

It is next insisted by counsel for appellant that the second count of the indictment fails to charge that the "Temperance Beer" was an intoxicating liquor or beverage. For this reason it is insisted that said second count is insufficient and states no offense against the laws of this State. We have carefully analyzed the allegations embraced in the second count of the indictment and we are unable to give our assent to the contention of appellant that it fails to charge any offense. While it is true that the second count does not in terms charge that the "Temperance Beer" was an intoxicating liquor or beverage, it does charge that said defendant did unlawfully sell a fermented and malt beverage containing alcohol, that is to say, one quart of "Temperance Beer," a fermented and malt beverage containing alcohol. The legal effect is that he sold an intoxicating beverage or liquor. It was not absolutely essential that the indictment should use the terms "sold intoxicating liquor," or "that the

liquor or beverage sold was intoxicating liquor,'' but if the indictment charged and designated the ingredients the composition sold as a beverage contained, and the component parts made it an intoxicating liquor, this in our opinion was a sufficient charge of a sale of an intoxicating beverage or liquor.

## V.

It is next insisted that there were two counts in the indictment and the trial court made a general finding of guilty, and that this constitutes such error as would warrant the court in reversing the judgment and remanding the cause. It will be observed that the first count was a plain charge of selling one quart of beer. In the second count the charge was he sold one quart of "Temperance Beer" which was a malt or fermented liquor containing alcohol, and upon this indictment the case was submitted to the court upon an agreed statement of facts. It is apparent from the record that the two counts in the indictment have reference to a single transaction and that counsel, both for the state and the defendant, by the agreed statement of facts, treated the charge in the indictment as having reference simply to one offense. In other words, counsel for the defendant and the State, with commendable frankness, stated the facts to the court; reduced them to writing for the express purpose of having the court simply determine whether or not the defendant was guilty of a violation of the Local Option Law which had been adopted in that county. The manner in which this cause was submitted, as indicated by the record, indicates clearly that it was understood that they were submitting for decision to the trial court but one offense. That being true we are unwilling to reverse the judgment in this cause and remand the case for another trial. [State v. Stewart, 90 Mo. 507; State v. Van Wye, 136 Mo. 228; State v. Schmidt, 137

Mo. 266; State v. Noland, 111 Mo. 473, and cases cited; State v. Spurgeon, 102 Mo. App. 34.]

## VI.

Complaint is made by appellant that the court failed to give any instructions. This was a trial for a misdemeanor before the court; no declarations of law were requested and there was no necessity for the court of its own motion directing itself as to the law of the case. Had the case been tried before a jury then of course it would have been the duty of the court in guiding the jury to a correct conclusion to declare the law as applicable to the facts in evidence.

## VII.

Finally appellant insists that the agreed statement of facts admits that the beverage as sold was non-intoxicating. We confess that the agreed statement of facts is somewhat inconsistent; however, we take it that the statement in which it is said that a non-intoxicating beverage was sold would not be binding upon the court where the parties then in detail recited the component parts of which the beverage was composed, and it is in such statement unqualifiedly admitted that this composition sold as a beverage contained alcohol, and the court was fully justified in finding that that was an intoxicating drink, as we have heretofore pointed out in the discussion of the leading proposition involved in this proceeding.

We have indicated our views upon all the questions disclosed by the record, which results in the conclusion that the judgment of the trial court should be affirmed, and it is so ordered. All concur.