For the reasons stated our preliminary writ is quashed. All concur.

---

THE STATE v. EDWARD PIGG, Appellant.

In Banc, December 30, 1925.

1. **APPELLATE JURISDICTION: Misdemeanor: Constitutional Right.** The Supreme Court has jurisdiction of an appeal from a judgment convicting defendant of a misdemeanor where he contends that the search of his automobile and the seizure of jugs and jars therein were illegal and violated the constitutional provisions relating to unreasonable searches and seizures.

2. **SEARCH: Automobile: Seizure Without Warrant: Intoxicating Liquor.** The Bill of Rights guarantees that "the people shall be secure in their persons, papers, homes and effects from unreasonable searches and seizures," and that means freedom from "unreasonable" searches and seizures. It does not mean that an automobile, which can move rapidly and quickly be beyond the reach of an officer, is to be classified with "persons, papers, homes and effects." A police officer who, in defendant's absence, detected the

State v. Pigg.

odor of corn whiskey about his automobile, parked, at nine o'clock at night, on a public street, had reasonable ground to search it without a warrant, and testimony that a hundred-pound sack of sugar on the front seat, thirty-six half-gallon fruit jars in burlap sacks, each containing from a few drops to a teaspoonful of whiskey, and three jugs were found therein and seized as a result of the search, is admissible in evidence upon the trial of defendant upon a charge of unlawful possession of intoxicating liquors.

*Held*, by GRAVES, J., dissenting, that, the jars being in sacks and there being no showing whether there were caps upon them, and the entire amount of liquid drained from the thirty-six being less than a half pint, it is preposterous to conclude that the officer smelt an odor of corn whiskey any reasonable distance from the automobile, but the physical facts, among others, that defendant had been previously convicted of a violation of the prohibition laws, strongly indicate that the mud on the car and the sack of sugar aroused the officer's suspicion and led him to make the search, in defendant's absence, and that the search revealed the odor, and therefore the search was unreasonable, and the evidence obtained thereby inadmissible.

3. **INTOXICATING LIQUOR:** Possession: Instruction: Definition: **Beverage Purposes: Potable.** An indictment based on Section 6588, as amended by Laws 1921, p. 414, and charging unlawful possession of intoxicating liquor, need not contain the words "for beverage purposes," but if it does they may be regarded as surplusage, and an instruction need not require the jury to find that the intoxicating liquor was possessed "for beverage purposes" or was "potable" or that it "contained one-half of one per cent of alcohol by volume," for said statute contains no such words and by the companion definitive statute (Section 6536) intoxicating liquor is any beverage containing alcohol in any quantity whatever.

4. ———: **Tests: Tasting and Smelling.** Testimony that the liquid drained from jars looked and smelled like corn whiskey is sufficient, without tasting it, to authorize a finding by the jury that it was intoxicating liquor.

5. ———: **Possession: Punishment.** An instruction authorizing the jury, if they find defendant guilty of unlawful possession of intoxicating liquor, to assess his punishment at not less than $100 nor more than $1,000, or by imprisonment in the county jail for a period of not less than thirty days nor more than one year, or by both such fine and imprisonment, is more favorable to defendant than the present statute authorizes, for it is based on Section 6604, Revised Statutes 1919, which was repealed and a new section enacted in lieu thereof in 1923 (Laws 1923, p. 243, sec. 20), which

State v. Pigg.

fixes the minimum fine for the first conviction at $200, for the second at $300, and for the third and each subsequent conviction at $1,000, with varying terms of imprisonment optional with the jury.

6. ———: Former Conviction as Evidence: Purpose: Instruction. If it were true that the court failed to instruct the jury for what purpose the record of defendant's former conviction of violating the liquor laws was admitted, such failure would not work a reversal of a conviction for a misdemeanor. But an instruction for defendant telling the jury that such evidence was "admitted for the sole purpose of arriving at the proper punishment to be given the defendant in the event you find him guilty of the offense charged" sufficiently declares the purpose; but a further clause in the instruction that "therefore you are not to consider such evidence as being derogatory to defendant's character or reputation" is too favorable to defendant.

7. ———: Possession: Minimum Amount. The statute fixes no irreducible minimum as the amount of intoxicating liquor a defendant must possess in order for its unlawful possession to constitute a violation of the statute; and where the evidence is positive that each of the thirty-six jars in defendant's possession contained from a few drops to a teaspoonful of corn whiskey at the time they were seized, and that when drained out into a separate vessel the whiskey amounted to a half glass or half pint, and the jugs gave every evidence of having been recently emptied, leaving a residue of corn whiskey in each, the court cannot say that as a matter of law the amount was so negligible as to require a directed verdict for defendant.

8. ———: Time of Possession. It is not necessary for the information to specify the time of the commission of an offense where time is not of its essence; and where it charges that on or about a certain day defendant unlawfully had in his possession intoxicating liquor, proof of possession within the time limited by the statute is admissible and sufficient.

9. WITNESS: Indorsed on Information. The statute (Sec. 3889, R. S. 1919) authorizes the court to permit the prosecuting attorney to call the sheriff as a witness, whose name, through inadvertence, has not been indorsed on the information.

10. ARGUMENT TO JURY: Bootlegger. Where the defendant had previously been convicted of four violations of the Prohibition Act and was on trial for the unlawful possession of intoxicating liquor, a remark by the prosecuting attorney in his argument to the jury

that "we are dealing with an habitual bootlegger who is caught red-handed with the goods" is not subject to just criticism.

Courts, 15 C. J., Section 512, p. 1081, n. 64, 65. Criminal Law, 16 C. J., Section 2029, p. 797, n. 71; Section 2259, p. 910, n. 64; Section 2426, p. 1005, n. 54; 17 C. J., Section 3700, p. 345, n. 42. Indictments and Informations, 31 C. J., Section 212, p. 683, n. 2; Section 440, p. 835, n. 74. Intoxicating Liquors, 33 C. J., Section 198, p. 585, n. 93; Section 376, p. 679, n. 55; Section 437, p. 722, n. 53; Section 505, p. 761, n. 53; Section 550, p. 794, n. 87.

Appeal from Audrain Circuit Court.—*Hon. Ernest S. Gantt*, Judge.

AFFIRMED.

*Don C. Carter* for appellant.

(1)   The court erred in overruling defendant's motion to quash the information and suppress the evidence, for the reason that said evidence was illegally obtained and was in violation of Sections 11 and 23 of Article 2 of the Constitution of Missouri.   State v. Owens, 302 Mo. 348, 32 A. L. R. 383; State v. Lock, 302 Mo. 400; State v. Tunnell, 302 Mo. 433; People v. Case, 220 Mich. 379, 27 A. L. R. 686; Hoyer v. State, 193 N. W. (Wis.) 89, 27 A. L. R. 673; "Annotation Search and Seizure Law," 27 A. L. R. 709; United States v. Rembert, 284 Fed. 996; Butler v. State, 129 Miss. 778; United States v. Meyers, 287 Fed. 260; State v. Gibbons, 118 Wash. 171; State v. Dunnivan, 269 S. W. (Mo.) 415.   (2) The court erred in giving Instruction 1, for the State, in which it was undertaken to define the elements of the offense with which defendant was charged.   State v. Perkins, 240 S. W. (Mo. App.) 851; Sec. 6602, R. S. 1919; Laws 1921, p. 413; Sec. 6536, R. S. 1919; 33 C. J. 577; Volstead Act, 41 U. S. Stat. 305, Chap. 85; State v. Gauthier, 121 Me. 522, 26 A. L. R. 652.   (3)   The court erred in refusing to properly rebuke and reprimand the prosecuting attorney, for his highly prejudicial and improper argument to the jury. State v. Stockton, 228 S. W. 1082; State v. Schneider, 259 Mo. 319; State v. Webb, 254 Mo. 414; State v. Bobbst, 131 Mo. 328; State v. Clancy, 225 Mo. 659; State v. Dozier, 177 S. W. 359; State v. Davis, 217 S. W. 91; State

v. Goodwin, 217 S. W. 264; State v. Fischer, 124 Mo. 460; State v. Adams, 269 S. W. 401. (4) The court erred in refusing to give defendant's demurrer to the evidence on the first count of the information at the close of the State's case, and again at the close of all the evidence in the case. See cases cited, under Point 1. (5) The court erred in permitting the State to offer in evidence proof of defendant's prior conviction of a violation of the prohibition laws, which was offered for the sole purpose of inflicting upon defendant punishment as for a second conviction under Sec. 6604, R. S. 1919, and then failed to properly instruct the jury thereon.

*Robert W. Otto,* Attorney-General, and *James A. Potter,* Special Assistant Attorney-General, for respondent.

(1) The court committed no error in allowing a witness for the State to testify, although his name had not been indorsed on the information. The right of the State to call witnesses whose names are not indorsed on the information or indictment, in the absence of intentional deception on the part of the prosecution, is unquestioned. State v. Rasco, 239 Mo. 535; State v. Lee, 288 Mo. 41; State v. Barrington, 198 Mo. 23, 68; State v. Peak, 292 Mo. 249; State v. Merrell, 263 S. W. 119; State v. Dixon, 253 S. W. 747. (2) The argument of State's attorney before the jury does not constitute reversible error. Although the courts do not approve of epithets and remarks outside of the record, yet if such conduct has not apparently influenced the jury the case will not be reversed on that ground. State v. Summar, 143 Mo. 220; State v. Elvins, 101 Mo. 243; State v. Hart, 237 S. W. 473; State v. Baker, 262 Mo. 689; State v. Hilton, 248 Mo. 522; State v. Rasco, 239 Mo. 535, 581; State v. Gartrell, 171 Mo. 489, 512; State v. Sherman, 264 Mo. 374; State v. Gordon, 253 Mo. 510; State v. Tracy, 294 Mo. 372. (3) The court committed no error in overruling defendant's instruction in the nature of a demurrer. There

was sufficient evidence to take the case to the jury.
State v. Barrington, 198 Mo. 23; State v. Bowman, 243
S. W. 114; State v. Poor, 286 Mo. 644; State v. Concelia,
250 Mo. 411. (4) The court did not commit error in
failing to withdraw from the jury the evidence relative
to defendant's prior conviction as a violator of the prohi-
bition laws. Defendant offered an instruction on this
point. If there was any error in this respect the defend-
ant invited it and consequently cannot complain. State
v. Miller, 234 S. W. 813; State v. Hart, 237 S. W. 482;
State v. Starr, 244 Mo. 161. (5) The court properly
overruled defendant's motion to suppress evidence in
this case on the ground that such evidence was unlawfully
obtained. The evidence consisted of a sack of sugar and
some fruit jars containing a small amount of corn liq-
uor. This was taken out of defendant's car by a police
officer who had no warrant for this purpose. Courts have
held under circumstances similar to these in this case
that an officer was justified in searching a suspicious
looking car for liquor without a search warrant. If an
officer has reasonable grounds to believe that an auto-
mobile has liquor in it then he is justified in searching it.
The evidence in this case was obtained legally. State v.
Zugras, 267 S. W. 804; Bent v. Commonwealth, 240 S. W.
(Ky.) 49; State v. Owens, 259 S. W. 104; Carroll v.
United States, 69 L. Ed. 347.

HIGBEE, C.—The information, filed in the Circuit
Court of Boone County, in the first count charges that the
defendant did, on or about February 2, 1924, unlawfully
possess intoxicating liquors for beverage purposes, and
that defendant was convicted on April 8, 1922, in the
Circuit Court of Boone County, Missouri, for violating
Article 7, Chapter 52, Revised Statutes 1919, as amended
by Laws of Missouri of 1921, page 414. The second
count, which charges that the defendant did unlawfully
transport intoxicating liquor, need not be considered,
as the court at the close of the evidence directed an ac-
quittal thereon. On the application of the defendant, a

change of venue was awarded to Audrain County where, on a trial, the defendant was found guilty on the first count, his punishment assessed at imprisonment in the county jail for a term of six months and a fine of $500, and sentence pronounced in accordance with the verdict of the jury.

Before entering upon the trial the defendant filed a motion stating that on the night of February —, 1924, the sheriff of Boone County and certain police officers of the city of Columbia, unlawfully searched his automobile, parked in said city of Columbia, and unlawfully seized and took into their possession a number of glass jars and jugs which were in said automobile, which they claim contained intoxicating liquors and are now held by them for the purpose of evidence in this case, and that the seizure was without a lawful search warrant and in violation of the Fourth and Fifth Amendments of the Constitution of the United States, and of Sections 11 and 23 of Article II of the Constitution of this State; that the State will endeavor to prove that said jars and jugs contained liquor and were defendant's property and located in defendant's automobile; that for the purpose of this motion and to invoke his constitutional rights defendant admits and avers that said jars and jugs were his property at the time and that he is now entitled to the possession thereof. Wherefore defendant prays that said information be quashed and that all evidence so illegally obtained by said officers be suppressed and excluded at the trial, etc.

On the hearing of this motion the defendant testified that he was a farmer living twenty miles north of Columbia, and that on the morning of February 2, 1924, he drove in his Ford touring car to Columbia, attended to some business matters during the day, and about seven P. M. parked his car on Broadway. After seeing some parties about some business matters, at about nine P. M., he went to get his automobile, but it was gone. After a search about town he found his car at the police station and was arrested and charged with having in-

State v. Pigg.

toxicating liquor in his possession and transporting it. He testified that there were no bottles or sugar in the car when he left it and that the bottles or jars and sugar found in the car were not his property.

Mr. Whiteside, a policeman, testified that, as he was walking his beat a little before nine P. M., he saw this car covered with mud, and when within three or four feet of it detected the odor of corn whiskey emanating therefrom. He saw a 100-pound sack of sugar on the front seat and several gunny sacks filled with glass jars and jugs between the seats. The car had the odor of whiskey and it was driven to the police station, where the sheriff and several policemen found thirty-six half-gallon glass fruit-jars in burlap sacks, three jugs and the sack of sugar in the car. Each of the jars contained from a few drops to a teaspoonful of whiskey. They did not taste it, but said it looked and smelled like corn whiskey; they drained the jars into one jar and got about half a tumbler (or as one witness said, nearly a half pint) of whiskey.

Officer King, on being interrogated by appellant's counsel, said there was nothing in the jugs; the jars smelled like corn whiskey. "Q. These jars didn't have anything in them except the residue or what would usually be left in any vessel after it had been emptied, just what would naturally run down from the sides? A. Yes, sir.

"Q. A drink of liquor in any of them? A. No, sir.

"Q. Drained them into another vessel and got about how much? A. Something near half a pint."

The court overruled the motion.

Thereupon the cause went to trial upon substantially the same evidence as that offered on the motion to suppress the evidence. The defendant, however, did not testify. In addition to the evidence of the officers who testified at the hearing of the motion, the State offered in evidence the liquor drained from the jars and a duly certified copy of the record of the defendant's conviction on April 9, 1922, in the Boone Circuit Court,

on four counts, for violations of the liquor laws and a fine of $100 on each count, and a jail sentence of thirty days on the first count.

W. D. Palmer testified for the defendant that he rode with him in his automobile to Columbia the day defendant was arrested and did not see any sacks or bundles in the car.

Othe Barnes, who lived two or three miles from defendant, testified he went to Columbia on the train on the day defendant was arrested; that he saw defendant about seven p. m., when defendant parked his car. The defendant told Barnes he would start home about nine or nine-thirty and that witness could ride home with him; that he followed defendant into a pool room and played pool with him until about a quarter to nine or nine, when witness left defendant, took the car, drove to a store, got a 100-pound sack of sugar for his mother, put the sack in the car, and drove back, but could not park the car where he got it, as some one else had the place, so he parked it nearby. Witness could not find the defendant and went home on the one o'clock train. He went to see defendant the next day. "Pigg said he didn't know that I had any sugar; that you fellows had it.

"Q. What did you do about it? A. Well, wasn't anything for me to do about it.

"Q. Why didn't you go to see Mr. Brown, the sheriff? A. I didn't think about that. Pigg told me the police got it. I didn't ask the police; I didn't think they would let me have it. I thought it was my loss, because I had put it in there without saying a word to him about it. I didn't ask Pigg how the officers came to take the sugar; I didn't think it was any of my business to ask him. I didn't ask him what the police got his car for; that wasn't none of my business; I was wanting my sugar back. He said he would try to help me get my sugar."

Mr. Whiteside, in rebuttal, testified that when he first located defendant's car it was about ten minutes to nine. "I know positively it was before nine, because I looked up at Stephens there as I went along."

I.  The defendant was convicted of a misdemeanor, but this court has jurisdiction of the appeal, because ap-

Appellate
Jurisdiction.

pellant contends the search of defendant's automobile and seizure of the jugs and fruit jars found therein without legal warrant, were in violation of the provisions of the Federal and State constitutions relating to unreasonable searches and seizures.

In State v. Owens, 302 Mo. 1. c. 368, 259 S. W. 100, 105, Judge WHITE, speaking for our Court en Banc, said: "We have reviewed the automobile cases to show they are not in point; in each of such cases the search was held to

Search:
Automobile:
Odor of
Whiskey.

be reasonable, because the delay in obtaining a search warrant would give time to the rapidly moving vehicles to be beyond the reach of the officers or to have disburdened itself of its load.  Whether such a reason justifies the search is not before us; we can determine that question when it comes up in a proper case."

In Carroll v. United States, 45 Sup. Ct. Rep. 280, 283, Chief Justice TAFT, deivering the opinion of the court, said:  "On reason and authority the true rule is that if the search and seizure without a warrant are made upon probable cause, that is, upon a belief, reasonably arising out of the circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid.  The Fourth Amendment is to be construed in the light of what was deemed an unreasonable search and seizure when it was adopted, and in a manner which will conserve public interests as well as the interests and rights of individual citizens."

After reviewing numerous decisions, the learned court, on page 285, further said: "We have made a somewhat extended reference to these statutes to show that the guaranty of freedom from unreasonable searches and seizures by the Fourth Amendment has been construed, practically since the beginning of the government, as recognizing a necessary difference between a search of a

store, dwelling house or other structure in respect of which a proper official warrant readily may be obtained, and a search of a ship, motor boat, wagon or automobile for contraband goods, where it is not practicable to secure a warrant, because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.''

Section 11 of Article II of our Constitution reads, in part: ''That the people shall be secure in their persons, papers, homes and effects from unreasonable searches and seizures.''

In State v. Zugras, 267 S. W. 804, 806, we quoted from Brent v. Comm., 194 Ky. 504, 511, 240 S. W. 45, 49, where the court construed this clause of the Kentucky Constitution, which is the same as ours except that it uses the word ''possessions'' instead of ''effects.'' It was there said: ''The right to immunity from unreasonable interference with security in person and property is unquestionable. The guaranties of Section 10 of our Constitution were intended to preserve that right. But the framers of that instrument were equally intent upon the proper administration of other governmental functions, among which is the efficacious enforcement of valid laws, to the end that order shall prevail. This aim of government is hardly less important than the preservation of personal liberty, for the latter is obviously dependent upon the maintenance of law and order. To give the word 'possessions' the broad construction sought would often result in the imposition of conditions under which it would be impracticable effectively to enforce the criminal laws of the State . . . Constitutional provisions of this kind rest on the fundamental principle that every man's house is his castle and is inviolable . . . The framers of those constitutions . . . were desirous of preserving inviolate the persons of every citizen and those possessions intimately associated with his person, his house, his papers and his effects.'' The learned court concluded that the word ''possessions'' is to be restricted to those *ejusdem generis;* that is, to things of

the same kind as those specifically enumerated; that is, "their persons, papers and homes."

We think it clear that, in the circumstances of this case, where the officers detected the odor of whiskey about the automobile, they had reasonable cause to search it without a warrant. And, in the circumstances of this case, in view of the defendant's testimony that the sugar, jars and sacks found in the car were not his property and he did not know they were in his car, he had no right to complain of their seizure nor to have them restored. The fact that intoxicating liquor was found in the automobile is proof enough that the search of the car without a warrant was reasonable. The court did not err in overruling the motion to exclude the evidence and restore the property to the defendant.

II.  Appellant complains of the second instruction given for the State, which reads: "The court instructs the jury that by the first count of the information in this case the defendant stands charged with possessing intoxicating liquor for beverage purposes. Therefore if you find and believe from the evidence in this case, and beyond a reasonable doubt, that the defendant, at and in the County of Boone and State of Missouri, did on the 2nd day of February, 1924, possess the beverage referred to in the evidence and that said beverage was an intoxicating liquor, and that said beverage was possessed for beverage purposes, then you will find the defendant guilty as charged in the first count of the information."

Intoxicating Liquor: Beverage Purposes.

The criticism is that this instruction assumes that the liquor or beverage in question was intoxicating liquor and did not require the jury to find that it contained one-half of one per centum of alcohol per volume and was potable or capable of being used as a beverage. This prosecution is not based on Section 6602, Revised Statutes 1919, which deals in part with "alcoholic liquids, whether proprietary, patented or not," but on Section

6588, as amended, Laws 1921, p. 414, which declares: "It shall be unlawful for any person . . . to manufacture, sell, possess, give away or transport intoxicating liquors," etc. Section 6536 reads: "The term 'intoxicating liquor' as used in this article, shall be construed to mean fermented, vinous and spirituous liquors, or any composition of which fermented, vinous or spirituous liquor is a part; and all the foregoing provisions shall be liberally construed as remedial in their character." Intoxicating liquor, as thus defined, is any beverage containing alcohol in any quantity whatever. [State v. Martin, 230 Mo. 1, 18, 129 S. W. 931.] Section 6588, as amended, does not contain the words "for beverage purposes" or the other phrases employed in Section 6602, relied upon by learned counsel for the appellant. Hence the words "for beverage purposes" contained in this instruction and in the information are mere surplusage and may be disregarded. The instruction, in using the words "for beverage purposes," imposed an unnecessary burden on the prosecution. [State v. Heilman, 246 S. W. 622 (3).] The instruction does not assume any fact the State was required to prove. The witnesses testified that the liquor drained from the jars looked and smelled like corn whiskey. This was sufficient, without tasting it, to authorize a finding by the jury that it was intoxicating liquor. Courts and juries know that whiskey is intoxicating. [State v. Berry, 255 S. W. 337, 338, and State v. Kiely, 255 S. W. 343, 344, and cases cited.]

III. The first instruction for the State told the jury if they found the defendant guilty on the first count they might assess the punishment at not less than $100 nor more than $1,000, or by imprisonment in the county jail for a period of not less than thirty days nor more than one year, or by both such fine and imprisonment. This instruction was based on Section 6604, Revised Statutes 1919, which was repealed and a new section (Sec. 22) enacted in lieu thereof, fixing the minimum fine for the first conviction at $200, for the

Punishment.

second $300, and for the third and each subsequent conviction $1,000, with' varying terms of imprisonment optional with the jury. [Laws 1923, p. 243.] This error was favorable to defendant and no complaint is made thereof in appellant's brief. Other instructions given for the State are not criticized in appellant's brief nor are we able to discover any error in them. Instruction 2 asked by the defendant is covered by the State's instructions and was properly refused.

IV. The State read in evidence the record of the defendant's former conviction in April, 1922, on four counts of an information for violations of the liquor laws. **Former Conviction.** Appellant complains that the court "failed to properly instruct the jury thereon;" that is, on the purpose of admitting evidence of the former convictions. If this criticism were true, it would not authorize a reversal of the conviction for a misdemeanor. [Sec. 4025, R. S. 1919; State v. Kiely, supra.] But the court gave the defendant's instruction, that this evidence was "admitted for the sole purpose of arriving at the proper punishment to be given the defendant in the event you find him guilty of the offense charged. Therefore you are not to consider such evidence as being derogatory to defendant's character or reputation." The latter part of this instruction is too favorable to the defendant. There is no merit in this complaint.

V. It is also contended there was no evidence tending to prove that the liquor drained from the jars was possessed by defendant for beverage purposes, or that **Percentage of Alcohol.** it was potable, or capable of being used as a beverage, or that it contained one-half of one per centum of alcohol. This contention has been considered and ruled against appellant.

VI. Again, it is contended that the evidence shows the defendant was in the possession of empty fruit jars "*which might at some time, perhaps that very day or.*

*night, have contained intoxicating liquor.* But the charge against defendant is not for what he 'might have had in the jars prior to the time the police found them in his car, but he is charged, at the time the jars were so found by the police, with possessing intoxicating liquor for beverage purposes.'' And it is urged that the conviction cannot stand upon a mere conjecture or possibility of the defendant's guilt.

We do not agree that the conclusion indicated by the words italicized is based on conjecture. The evidence is positive and uncontradicted that there was corn whiskey in each one of the thirty-six jars found in defendant's possession at the time of his arrest. The statute fixes no irreducible minimum as to the quantity necessary to constitute a violation of the statute. When collected in one jar there was from half a glass to half a pint of corn whiskey found in his possession. A court cannot say as a matter of law that this amount of liquor was so negligible as to require a directed verdict for the defendant. But waiving that question, appellant is in error in insisting that he was charged with unlawfully having intoxicating liquor in his possession at the very time he was arrested. The first count of the information charges that on or about February 2, 1924, the defendant did then and there unlawfully possess intoxicating liquor. It is not necessary in an indictment or information to specify the time of the commission of an offense where time is not of the essence of the offense; proof within the time limited by the statute is admissible. [State v. Pratt, 98 Mo. 482, 11 S. W. 977.]

When arrested the defendant had these thirty-six jars in his possession. They had every appearance of having recently been emptied, leaving a residue of corn whiskey in each jar. No other conclusion can reasonably be drawn from the evidence. The defendant drove his car to Columbia in the morning and parked it about seven P. M. That the jars had contained corn whiskey and had been emptied during the day is a fair and reasonable conclusion. ''Evidence is of two kinds, direct and circumstantial; circumstantial evidence is proof of

certain facts and circumstances in a certain case in which the jury may infer other and connected facts which usually and reasonably follow according to the common experience of mankind; crime may be proven by circumstantial evidence as well as by direct testimony of eye witness, but the facts and circumstances in evidence should be consistent with each other and with the guilt of the defendant and inconsistent with any other reasonable theory of the defendant's innocence.'' [State v. Shelton, 223 Mo. 118, 138, 122 S. W. 732.] ''Any fact which becomes material in a criminal prosecution may, as a rule, be established by circumstantial as well as by direct evidence. A resort to proof of circumstances is often the only means of establishing the ultimate fact of guilt; and such evidence will alone support a conviction if it produces a belief beyond a reasonable doubt in the minds of the jury, that accused is guilty; and the conclusion of guilt need not necessarily follow from the circumstances in proof, but may be obtained therefrom by probable deduction. Thus accused's evasions, denials, contradictions and falsities may be considered as links in the chain of circumstantial evidence showing his guilt; and attempts by accused to suppress evidence, suggestions of deceptive explanations and endeavors to cast suspicion upon others without just cause, are circumstances to be considered against him.'' [16 Corpus Juris, p. 762.]

The attempt to prove by defendant's witness Barnes that, without defendant's knowledge or consent, he took defendant's car from its parking place, drove to a store and got the sack of sugar for his mother at the very time the officers found the jars and drove the car to the police station, and that Barnes did not ask the sheriff or the other officers for the sugar, was so transparently false and unreasonable as to be considered as a circumstance by the jury in arriving at their verdict. So, also, of the evidence of defendant's witness Palmer that he rode in defendant's car to Columbia and saw no sacks or bundles

in the car. What Judge WALKER said in State v. Shout, 263 Mo. 360, 374, 172 S. W. 607, is apposite:

"The vague and indefinite manner in which they testify in regard to the transaction and the atmosphere of the proceeding throughout savor so strongly of fraud that direct testimony, if it could have been procured, was not necessary to sustain a conviction. The jury so found, and, being the sole judges of the weight and effect of the facts presented, their verdict will not be disturbed, although the evidence be largely circumstantial. [State v. Cannon, 232 Mo. 205; State v. Fields, 234 Mo. 615.] Not only is it true, as a general proposition, that the jury are the judges of the sufficiency of the evidence, but, the court having determined in this case that there was evidence of a conspiracy, it remained for the jury to say if one existed and its object. This they did. [State v. Walker, 98 Mo. 95; State v. Roberts, 201 Mo. l. c. 728.]"

Although the evidence was largely circumstantial the jury, in the exercise of their common sense and viewing the case in the light of the common experience of mankind, were justified in finding that the defendant was guilty of the offense of unlawfully possessing intoxicating liquor, and might also have found him guilty on the second count but for the too favorable ruling of the learned trial court.

VII. The court permitted the prosecuting attorney to call the sheriff as a witness for the State whose name, through inadvertence, had not been indorsed on the information. This was authorized by Section 3889, Revised Statutes 1919. [State v. Rasco, 239 Mo. 535 (4), 144 S. W. 449; State v. Merrell, 263 S. W. (Mo.) 118 (1).]

*Witness.*

VIII. Appellant complains of prejudicial remarks by the prosecuting attorney and a failure adequately to rebuke him therefor. During the opening argument he said: "We are dealing with an habitual bootlegger who is caught red-hand-

*Argument to Jury.*

ed with the goods." The court sustained and objection, saying: "There is no evidence in this case that the defendant is a bootlegger. The court thinks that is improper and the jury will disregard that part of the argument." The defendant had been convicted of four violations of the Prohibition Act. The prosecutor's remarks were not subject to just criticism.

The judgment is affirmed. *Railey, C.,* concurs.

PER CURIAM:—The opinion of HIGBEE, C., in Division Two, is adopted as the opinion of Court in Banc. *Blair, C. J.,* and *Walker, Ragland* and *Atwood, JJ.,* concur; *White, J.,* dissents; *Graves, J.,* dissents in separate opinion filed; *Otto, J.,* not sitting.

GRAVES, J. (dissenting).—I cannot concur in this opinion. We have a Constitution of our own to respect, in that this is a proceeding under the State law. The basis of the opinion lies in the alleged fact that the officer scented "corn whiskey." It is not shown whether the jars had caps upon them or not. They were in sacks. But at most there was less than a half pint of fluid (whatever it was) in all the jars, and it is preposterous to think that the aroma from this small amount of corn whiskey, or any other kind of whiskey, would have touched the acute olfactory nerves of one at any reasonable distance from the automobile. The facts (physical facts) indicate strongly that the sack of sugar and the mud upon the car aroused the suspicion of the officer, and he, without warrant, in the absence of the owner, searched the car, opened the sacks and the jugs and bottles, and then for the first time caught the scent. We should apply our common sense to a case of this kind. Had there been no mud on this car, and had there been no sack of sugar in it, there would have been no scent of "corn whiskey" by the policeman. Previous conviction might have helped his olfactory nerves also. As indicated above, had the real truth been told, this policeman, made suspicious by the mud upon the car, the sack of sugar and previous conviction of the defendant, proceeded to

search the car, and when he opened the sack and jars then got his first "scent." But in addition had a doctor given a patient a little liquor strictly for an ailment, and an officer chanced to smell his breath, he could search him upon the street without a warrant, under this opinion. This is not the law.

The evidence should have been suppressed, and I dissent to the opinion by our learned Commissioner.