The State v. Fiske.

No. 25,333.

THE STATE OF KANSAS, *Appellee*, v. HAROLD B. FISKE, *Appellant*.

SYLLABUS BY THE COURT.

1. CRIMINAL SYNDICALISM—*No Error in Refusing Continuance.* It is held that no abuse of discretion is shown in the overruling of a motion for a continuance.

2. SAME—*Venue Question of Fact for Jury.* The question whether a criminal prosecution was brought in the proper county is held to have been one of fact for the determination of the jury.

3. SAME—*Proof of Corpus Delicti.* It is held that if the *corpus delicti* cannot be proved by extra-judicial admissions of the defendant, there was in this case such corroborative evidence as to prevent the application of the rule.

4. SAME—*Articles Wrongfully Obtained Competent Evidence.* The rule is applied that articles are not rendered inadmissible in evidence by the fact that they were wrongfully obtained.

5. SAME—*Sufficient Information.* An information is held sufficient to charge a violation of the statute penalizing criminal syndicalism.

6. SAME—*Evidence Supports Conviction.* The evidence is held to support a conviction on a charge of criminal syndicalism.

7. SAME—*Freedom of Speech Not Violated.* Constitutional guarantees of freedom of speech are not violated by a statute penalizing the advocacy of violence in bringing about governmental changes.

Appeal from Rice district court; CLYDE R. DOUGLASS, judge. Opinion filed November 8, 1924. Affirmed.

*Charles L. Carroll,* of Great Bend, *A. M. Harvey, Randal C. Harvey,* and *Paul L. Harvey,* all of Topeka, for the apellant.

*Charles B. Griffith,* attorney-general, and *Bronce Jackson,* county attorney, for the appellee.

The opinion of the court was delivered by

MASON, J.: Harold B. Fiske appeals from conviction upon a charge of violating the statute which defines criminal syndicalism and penalizes its advocacy.

1. The offense is alleged to have been committed on July 2, 1923. A term of court began September 4, 1923, on which day the information was filed. On September 18, the day the case was tried, the defendant filed a motion for a continuance until a later date or until the next term, on the ground that his regular counsel, a resident of Chicago, was unable to be present because of being of counsel in cases pending in another court and his local attorney had

not had time to prepare a proper defense. The overruling of the motion is complained of. The matter was within the discretion of the court and it cannot be said that any abuse of discretion was shown.

2. It is contended that the case should have been transferred to Reno county under the statute authorizing such procedure where it develops that a prosecution is brought in a county not having jurisdiction. (R. S. 62-1442.) The defendant testified that he took two applications for membership in the Industrial Workers of the World (upon which conduct the state relied for conviction) at Haven, in Reno County, on June 30, saying, however, that he went from that county into Rice that day and was in the latter county all of July 1, The day the application cards bore date. He gave an explanation consistent with the applications having been made June 30, but its credibility was one of the issues of fact. There was also evidence that the sheriff of Rice county said to him in Geneseo, in that county, "Have you got any members here in this county?" and that he answered, "Yes, two." There was other testimony to the same effect. The question whether the applications were taken in Rice county was therefore a fair one for the jury.

3. It is urged that there was no evidence of the defendant having induced anyone to join the Industrial Workers of the World except his own statements made out of court, and that the *corpus delicti* cannot be established by his extra-judicial admissions. The rule, if otherwise sound and applicable, does not apply here, because of the corroboration afforded by the signed cards in the possession of the defendant, which were identified by him as applications for membership.

4. Without a warrant the defendant was arrested and papers in his possession were seized. The use of the papers in evidence is objected to on the ground of their illegal seizure. This court has adopted and recently confirmed the rule that articles are not rendered inadmissible as evidence by the fact that they were wrongfully obtained. (*The State v. Johnson,* 116 Kan. 58, 226 Pac. 245.)

5. Error is assigned in the overruling of a motion to quash the information. The statute under which the prosecution is brought, so far as now important, reads:

"Any person who, by word of mouth, or writing, advocates, affirmatively suggests or teaches the duty, necessity, propriety or expediency of crime, criminal syndicalism, or sabotage, or who shall advocate, affirmatively suggest

or teach the duty, necessity, propriety or expediency of doing any act of violence, the destruction of or damage to any property, the bodily injury to any person or persons, or the commission of any crime or unlawful act as a means of accomplishing or effecting any industrial or political ends, change or revolution, or for profit;  .  .  .  is guilty of a felony." (R. S. 21-303.)

"Criminal syndicalism is hereby defined to be the doctrine which advocates crime, physical violence, arson, destruction of property, sabotage, or other unlawful acts or methods, as a means of accomplishing or effecting industrial or political ends, or as a means of effecting industrial or political revolution, or for profit." (R. S. 21-301.)

## The material part of the information reads:

"That on or about the 2d day of July, 1923, and in the county of Rice and state of Kansas, one Harold B. Fiske, then and there being, did then and there unlawfully, feloniously and willfully, by word of mouth and by publicly displaying and circulating certain books and pamphlets and written and printed matter, advocate, affirmatively suggest and teach the duty, necessity, propriety and expediency of crime, criminal syndicalism and sabotage, by then and there unlawfully, willfully, knowingly and feloniously persuading, inducing and securing Henry Lang, Earl Summers and George Kelley to sign an application for membership in a society known as the Agriculture Workers' Industrial Union No. 110, and by issuing to the said Henry Lang, Earl Summers and George Kelley membership cards, commonly known as the red card, in said Agriculture Workers' Industrial Union No. 110, which said Agriculture Workers' Industrial Union No. 110 is a branch of and component part of the Industrial Workers of the World organization, said defendant then and there knowing that said organization unlawfully teaches, advocates and affirmatively suggests:

" 'That the working class and the employing class have nothing in common, and that there can be no peace so long as hunger and want are found among millions of the working people and the few who make up the employing class have all the good things of life.' And that, 'Between these two classes a struggle must go on until the workers of the world organize as a class, take possession of the earth and the machinery of production and abolish the wage system.' And that, 'Instead of the conservative motto, "A fair day's wages for a fair day's work," we must inscribe on our banner the revolutionary watchword, "Abolition of the wage system." '

" 'By organizing industrially we are forming the structure of the new society within the shell of the old.' "

The information charges the defendant in so many words with having done the things prohibited by the statute, and the question presented is whether the specifications descriptive of the manner in which the acts were done bear out the general terms of the accusation. It does not in set phrase allege that the association known as the Industrial Workers of the World advocates, affirmatively suggests or teaches criminal syndicalism, but when read as a

whole it clearly signifies this, and also that·the language quoted (which the evidence shows to be taken from the preamble of the constitution of that organization) was employed to express that doctrine. We regard persuading and inducing others to join an association as one of the methods of advocating, affirmatively suggesting and teaching the doctrines on which it is based. An information has been held insufficient which merely charges the defendant in general terms with having advocated and suggested certain doctrines, the court saying that although words used by way of advocacy, teaching or suggestion need not be set out with verbal accuracy, "the content of the propagation should be fairly indicated." (*The State v. Breen,* 110 Kan. 817, 205 Pac. 632.) Here the method of propagation is specifically · pointed out—inducing others to become members of an organization devoted to such propaganda. This reasonably advises the defendant of the nature of the charge. It is not necessary that the pleader should go further and set out the arguments that were used to attain the end sought.

6. The defendant asserts that there was no evidence to support the verdict of guilty. He testified that he had secured the applications of Henry Lang, Earl Summers and George Kelley and issued them membership cards in the I. W. W., saying, however, that this was not done in Rice county—a matter which has already been discussed. He continued:

"I understand what the Industrial Workers of the World organization teaches. I understand that it teaches, advocates and states that the working class and the employing class have nothing in common and that there can be no peace so long as a few, who make up the employing class, have all of the good things of life. I understand that between these two classes a struggle must go on until the workers of the world organize as a class, take possession of the earth and the machinery of production and abolish the wage system. I understand that instead of the conservative motto, 'A fair day's wages for a fair day's work,' we must inscribe on our banner the revolutionary watchword, 'Abolition of the wage system.' I understand that by organizing industrially we are forming the structure of the new society within the shell of the old. We are organizing with industrial unions to take care of the labor situation in this country and in the world. That means that there won't be any capital, and that means that everybody—that one will be just as well off as the other fellow, at such time as it can be done, and means that everybody will work. That is what it means when it says, 'By organizing industrially we are forming the structure of the new society within the shell of the old.' The new society will be a new organization—new control—control of industry. By 'in the shell of the old' I mean it will be forward, and instead of breaking up, we will not destroy anything, but we will build them. We will not take over property,

The State v. Fiske.

but everybody will own property. This will be forced in economically. That is what I was teaching and suggesting when I took these applications. I didn't come right out and say that. The working class will enforce the laws when they are organized sufficiently. The people of the earth will make the laws; we will all belong to the working class. . . . They came to me and asked me if I knew where there was an I. W. W. organizer, and I told them I was one, and they asked me to explain it to them and I explained it to them. I explained the principles of the organization as far as I knew."

The language quoted from the I. W. W. preamble need not, in order to sustain the judgment, be held necessarily and as a matter of law to advocate, teach or even affirmatively suggest physical violence as a means of accomplishing industrial or political ends. It is open to that interpretation and is capable of use to convey that meaning. The construction to be placed upon it in the connection in which it was employed was submitted as an issue of fact by an instruction that no conviction could be had unless from the evidence and beyond a reasonable doubt the jury were satisfied (among other things) that the organization commonly called the I. W. W. is one that teaches criminal syndicalism as defined in the statute. The jury were not required to accept the defendant's testimony as a candid and accurate statement. There was room for them to find, as their verdict shows they did, that the equivocal language of the preamble and of the defendant in explaining it to his prospects was employed to convey and did convey the sinister meaning attributed to it by the state.

7. A final contention is that the statute violates the provision of the state constitution that "The liberty of the press shall be inviolate; and all persons may freely speak, write or publish their sentiments on all subjects, being responsible for the abuse of such right" (Bill of Rights, § 11), and (because of invading the fundamental rights sought to be thereby protected) also is obnoxious to the due-process-of-law clause of the fourteenth amendment to the federal constitution. Statutes penalizing the advocacy of violence in bringing about governmental changes do not violate constitutional guarantees of freedom of speech. Their wisdom and justice are matters for the determination of the legislature. Cases holding valid acts of the same type as that here involved are collected in recent notes. (1 A. L. R. 336; 20 A. L. R. 1535, 1543.)

The judgment is affirmed.

Harvey, J., not sitting.