THE STATE v. GUS HOWARD, Appellant.—23 S. W. (2d) 11.

Division Two, December 11, 1929.

*J. H. Whitecotton, Jas. E. Boggs,* and *J. W. Wright, Jr.,* for appellant.

*Stratton Shartel,* Attorney-General, and *Hibbard C. Whitehill,* Special Assistant Attorney-General, for respondent; *J. A. Walden* of counsel.

150

COOLEY, C.—Defendant was convicted in the Circuit Court of Boone County of the felonious transportation of hootch, moonshine, corn whisky, sentenced to two years' imprisonment in the penitentiary, and appeals. The offense was committed in Randolph County, and the case reached the Boone County Circuit Court on a change of venue. Before the trial defendant filed a motion to suppress certain evidence which, after hearing evidence thereon, the court overruled. Defendant then filed a motion to quash the information which was overruled. These rulings are assigned as error and will be considered later.

Since defendant challenges the sufficiency of the evidence to authorize submission of the case to the jury or to sustain the verdict of guilty, it will be appropriate to make a somewhat detailed statement of the facts. The evidence for the State showed, in substance, the following:

H. H. Hughes testified that he was a resident of Cairo, Randolph County, Missouri; that on his way to Moberly on the morning in question he was passed by defendant in a Ford roadster automo-

bile going about thirty miles an hour; that about a mile further on he saw defendant's car on its side in the ditch on "the right-hand side" (west side) of the road; that defendant's car was not out of his sight from the time it passed him until it went into the ditch; that he asked defendant if he were hurt and wished to be taken to town, and defendant replied in the negative and asked witness to send out someone from a garage to him. Witness saw no one leave defendant's car and no one else present. He noticed something dripping from the rear end of defendant's car and smelled an odor about the car which was the same odor as that of the contents of two jugs which were exhibited to him at the trial. The jugs with their contents were shown by other evidence to have been in defendant's car at the time.

Two cars were coming along behind witness, one of which, driven by a Mr. Woods, stopped at defendant's car, and then came on, passing witness who had stopped to see if he had a flat tire. All things detailed by him, Hughes testified, happened in Randolph County, Missouri. We mention the latter fact because of defendant's contention that the venue was not proved.

V. L. McCanne, then Sheriff of Randolph County, testified that he was at Huntsville that morning and was called by Mr. Woods and notified that there was a man out there on the road with some whisky, and immediately went in his car to the scene, finding defendant's Ford roadster lying on its side in the ditch on the west side of the road. Hootch, moonshine or corn whisky was running out of it and there was a strong odor of hootch, moonshine or corn whisky around the car. Defendant and one Ray Meyer, a taxi-driver, were there. Defendant was intoxicated. He and Meyer were doing something at the back end, the turtle shell, of defendant's car, which was locked. Meyer, in defendant's presence, said he had come out after defendant.

McCanne arrested defendant and then searched him, finding upon him a half-pint bottle about one-fourth full of moonshine, corn whisky, an ignition key for a Ford car, and a key that unlocked the rear compartment of defendant's car. After getting the roadster righted, witness unlocked the said compartment and found therein two five-gallon jugs filled with liquor which witness pronounced moonshine and corn whisky. There was another jug, broken, in a burlap sack and the contents had spilled over the two unbroken jugs and were leaking from the car. Witness took possession of the two unbroken jugs, kept them continuously in his custody and produced them with contents unchanged at the trial, and they were introduced in evidence.

At the place of his arrest defendant asked McCanne who had called him so soon after he (defendant) turned over, saying that

he had "got a little full" and got a man to drive him and this fellow had gone on to send somebody back while he himself stayed with the car, and saying further: "I guess you are satisfied, you caught me." It is not clear whether these remarks were made by defendant before or after he was placed under arrest. The place where witness found defendant's car was in Randolph County, Missouri.

Witness McCanne testified that he examined and tested the contents of the two jugs above mentioned, and that the liquor was hootch, moonshine or corn whisky, one hundred proof by the specific gravity test and containing about fifty per cent alcohol by volume. Four other witnesses for the State examined the liquor in the two jugs and testified that it was corn whisky. Several of the witnesses, in addition to smelling and tasting it, had tested it to see if it would burn and found that it would. Defendant objected to the qualification of these witnesses to testify as to what the liquor was. This objection will be discussed later.

Defendant did not testify. He called as a witness a chemist to whom had been submitted samples of liquor from the two jugs and who testified that he had analyzed it and that the analysis showed it was not corn whisky; that it was a distilled liquor, but was derived from fruits, and that liquor distilled from fruits is not called whisky, but brandy; that whisky is made from grain.

I. Defendant's first assignment of error is that the court overruled his motion to suppress evidence, viz., the two jugs of liquor found in defendant's car after his arrest. The sheriff had no warrant for defendant's arrest and no search warrant, and defendant contends that the search of the car and seizure of the liquor were unreasonable and without probable cause and therefore in violation of defendant's constitutional rights under Section 11, Article II, of the State Constitution, and the fourth amendment to the Federal Constitution, and in violation of Section 25 of the Act of 1923, Laws 1923, page 244. He cites no authorities.

The court heard evidence upon the motion from which it appeared that the sheriff had been called by telephone by Mr. Woods and immediately went to the place designated, found defendant there in an intoxicated condition with his car overturned in the ditch at the side of the road and whisky still running out of the locked compartment of the car, the smell of the liquor pervading the atmosphere. It must have been apparent that the car had very recently been driven into the ditch, and the defendant being intoxicated and the time intervening between the sheriff's receipt of the call from Woods and his arrival on the scene being so short, there was reasonable ground for the sheriff to believe that defendant had been driving his car while intoxicated. He thereupon

arrested defendant. The search and seizure were made after the arrest. Driving a car while intoxicated is a felony. "The rule in this State is that an officer may make an arrest without a warrant when he has reasonable ground to suspect that the person arrested has committed a felony." [State v. Bailey (Mo.), 8 S. W. (2d) 57, and cases cited.]

In the Bailey case the officer was notified by telephone that the defendant therein was driving a car in a certain direction with liquor in his car, and a description of the defendant and his car was given, from which the officer recognized the man and arrested him and thereupon searched his car and found and seized the liquor, which was used in evidence. A motion to suppress the evidence was held properly overruled. The court cites among other cases and quotes from Carroll v. United States, 267 U. S. 132, 149, 45 Sup. Ct. 280, 283, 69 L. Ed. 543, 39 A. L. R. 790, wherein it is held that if the search and seizure without warrant are made upon probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid. [See also State v. Pigg, 278 S. W. 1030, and cases cited; State v. Thurston, 300 S. W. 485.]

Defendant's reason for invoking Section 25, Laws 1923, supra, is not clear. That section provides for the issuance of search warrants and proceedings thereon and is not here involved unless defendant's counsel had in mind the proviso therein contained that the section should not be construed to prevent an officer whose duty it is to make arrests from arresting, with or without warrant, any one found violating any provision of the act. That provision was not intended to and does not limit or deny the right of an officer to arrest for felony without warrant under the rule above referred to. We think the motion to suppress evidence was properly overruled. A stronger showing of the sheriff's right to arrest defendant and search his car without warrant was made on the trial, it being there shown in addition to the foregoing facts shown on the hearing of the motion to suppress, that the sheriff recognized the smell of the liquor dripping from defendant's car to be that of hootch, moonshine or corn whisky, the transportation of which is a felony. Defendant's only objection to this evidence at the trial was on the ground that McCanne was not shown to be qualified to testify as to the character of the liquor.

II. Defendant assails the validity of the information on the ground that it is insufficient to state any offense and that the "act and sections of the act" under which it is drawn are void as being in violation of Section 28 of Article IV of the State Constitution

154

and that the section of the statute involved is so vague and indefinite that it defines no offense.

The information, omitting formal parts, charges "that Gus Howard, on the eighth day of September, 1926, at the County of Randolph and State of Missouri, did then and there knowingly, wilfully and feloniously transport a quantity of 'hootch,' 'moonshine,' 'corn whisky,' and against the peace and dignity of the State." It is sufficient. [State v. Knight, 300 S. W. 719, and cases cited; State v. Brown, 317 Mo. 361, 296 S. W. 125; State v. Cardwell, 312 Mo. 140, 279 S. W. 99, and cases cited; State v. Bailey, supra.]

Section 28 of Article IV of the State Constitution is the requirement that no bill shall contain more than one subject which shall be clearly expressed in its title. In what particular defendant conceives that the act or section thereof under which he is charged violates the constitutional provision invoked, he does not inform us. The title of the act embraces "the exercise of the police power of the state, by and through prohibiting the manufacture, possession, transportation, sale and disposition of intoxicating liquors; . . . and prescribing penalties for violations of this act," etc. The subject of transportation denounced by Section 21, under which the information is drawn, is clearly expressed in the title of the act. It has been heretofore held by this court that the act in question is not invalid under Section 28, Article IV, of the State Constitution as containing more than one subject. See State v. Boyer, 300 S. W. 826; State v. Tallo, 308 Mo. 584, 274 S. W. 466.

The contention that the statute is void for uncertainty is answered adversely to defendant's contention in State v. Combs (Mo.), 273 S. W. 1037, and State v. Griffith, 279 S. W. 135, 139. There was no error in overruling the motion to quash the information.

III. The sheriff testified that the liquor in the two jugs taken from defendant's car was hootch, moonshine or corn whisky. Four other witnesses for the State, Fleming, Fenton, Ballew and Whitesides, testified, after examining it, that it was corn whisky. Defendant assigns error in the admission of this testimony on the ground that the witnesses were not shown to be qualified to testify as to what the liquor was. On this point it was shown by the respective testimony of these witnesses as follows: McCanne, Sheriff of Randolph County and previously a police officer, had had considerable experience with intoxicating liquor, particularly hootch, moonshine and corn whisky, had seen it in all stages of manufacture and had made tests of it. Fenton was a police officer of about fifteen years' experience in that capacity and as Deputy Sheriff of Boone County. In his official capacity he had had considerable experience in handling and

examining hootch, moonshine, corn whisky, and other illicit intoxicating liquors. Fleming, Chief of Police of Moberly, had had about nine years' experience as police officer, during which time his duties had brought him into contact with hootch, moonshine and corn whisky, and he was experienced in determining the various kinds of intoxicating liquors ever since prohibition came into effect. Whitesides, Assistant Chief of Police of Columbia, and Ballew, Deputy Sheriff of Boone County, testified to having had considerable experience along the same lines, Whitesides testifying further that he knew hootch, moonshine and corn whisky, when he tasted, smelled and tested it, as he had done with that introduced in evidence, and Ballew that he had examined perhaps hundreds of samples of intoxicating liquors, was acquainted with hootch, moonshine and corn whisky and could tell whether a liquor was that or something else. We think these witnesses sufficiently qualified and that the court did not err in permitting them to state what, in their opinion, the liquor was. The weight of their testimony was for the jury to determine. [State v. Marshall, 297 S. W. 63; State v. Wheeler, 2 S. W. (2d) 777; State v. Moore, 279 S. W. 133.]

IV. Defendant assigns error in the refusal of the court to sustain his demurrer and to give an instruction directing a verdict of not guilty. He asserts that the venue was not proved and that there was no substantial testimony tending to prove that the liquor in the two jugs offered in evidence was hootch, moonshine, corn whisky. We have set out the substance of the evidence rather fully with this assignment in mind, and it is unnecessary to repeat it. We regard it as ample to take the case to the jury and to sustain the verdict.

V. Defendant assigns error in several of the instructions given at the request of the state. Instructions numbered 1, 2 and 6 are particularly stressed as erroneous. They are as follows:

"1. The court instructs the jury that if you find and believe from the evidence beyond a reasonable doubt that at the County of Randolph, in the State of Missouri, at any time within three years next before the ninth day of September, 1926, defendant, Gus Howard, did unlawfully and feloniously transport any hootch, moonshine or corn whisky, you will find said defendant guilty and unless you so find you will acquit said defendant . . ."

The remainder of the instruction relates to the punishment.

"2. The court instructs the jury that the term 'hootch, moonshine or corn whiskey' as used in the information and in these instructions, means any illegally distilled whiskey, without regard to the material or materials from which same may be distilled.

"6. The court instructs the jury that the defendant is presumed to be innocent and it devolves upon the State to prove his guilt beyond a reasonable doubt. But such a doubt to authorize an acquittal on that ground alone should be a substantial doubt of guilt arising from the evidence in the case and not a mere possibility of innocence."

The contention as to Instruction No. 1 is that it broadens the issues by the use of the word "or" before the words "corn whisky," indicating to the jury that hootch, moonshine and corn whisky are different substances and that it tended to confuse the jury, "there being no substantial proof of the transportation of hootch, moonshine, corn whiskey." This contention seems from defendant's brief to be based upon the hypothesis that "the words used in the information are supposed to be synonymous and the charge did not warrant the disjunctive submission by the instruction that the defendant could be found guilty if he had transported 'hootch, moonshine or corn whiskey.'" That the words "hootch," "moonshine," and "corn whisky" are not synonymous was decided in State v. Pinto, 312 Mo. 99, 109, 279 S. W. 144, overruling State v. Brown, 304 Mo. 78, 262 S. W. 710, on that point. See also State v. Kroeger, 13 S. W. (2d) 1067. Hootch and moonshine are not necessarily corn whisky though all illegally distilled corn whisky is moonshine. [State v. Pinto, supra.] But one act of transportation was charged and but one proved. The information is sufficient to authorize proof that the liquor transported was either hootch, moonshine or corn whisky. One witness in describing the liquor used all three terms. Others called it corn whisky. Instruction 1, therefore, was within the issues made by the information and the proof and was not erroneous.

Instruction 2 is complained of on the ground that it does not properly define hootch, moonshine, corn whisky. Under this instruction the jury would have to find that the liquor was *illegally distilled whisky*, in which event it was hootch or moonshine whether made from corn or some other material. While the definition is not accurate in so far as it applies to corn whisky, it could not have been prejudicial to defendant in this case. The verdict was a finding that defendant transported the liquor and whether it was hootch, moonshine or corn whisky it was within the terms of the information and the proof. We think defendant's rights were in no wise prejudiced by the giving of Instruction 2.

Instruction 6 is assailed on the ground that it does not sufficiently define "reasonable doubt," and in support of this contention defendant cites the statute, Section 4025, Revised Statutes 1919; State v. Owens, 79 Mo. 619; State v. Clark, 147 Mo. 20, 47 S. W. 886; State v. Douglas, 258 Mo. 281, 167 S. W. 552; State v. Nerzinger, 220 Mo. 36, 49, 119 S. W. 379. In the Owens case the words "substantial doubt" were further qualified by the word "real" before "substantial," thus requiring a doubt, to authorize acquittal on that ground, to be a *real* substantial doubt. The use of the qualifying adjective "real" was properly criticized by the court, although the reversal of the case was on other grounds. In the Clark case the only reference to reasonable doubt was in the instruction on presumption of innocence which told the jury that such presumption entitled defendant to acquittal unless the evidence satisfied the jury of defendant's guilt beyond a reasonable doubt, "as defined in these instructions." There was no other instruction defining reasonable doubt nor, apparently, referring to that subject. The judgment was reversed for failure properly to define reasonable doubt. In the Douglas case the only instruction referring to reasonable doubt was the one upon the subject of good character, and it was said by the court that that instruction so blended the subjects of good character and reasonable doubt as to minimize the effect of any doubt the jury may have entertained, and that there should have been a specific instruction to the effect that unless the jury believed from the evidence beyond a reasonable doubt that defendant was guilty he should be acquitted. In the Nerzinger case the court gave the often approved instruction on reasonable doubt in this form: "If, upon consideration of all the evidence, you have a reasonable doubt of the defendant's guilt, you should acquit; but a doubt to authorize an acquittal on that ground, ought to be a substantial doubt of defendant's guilt, and not a mere possibility of his innocence." The court said that that instruction embodied the true doctrine as to reasonable doubt in criminal cases; that it had become almost canonized; that it is better to adhere to instructions that have been approved "and not to attempt definitions which add nothing to the meaning of well understood terms." The above observations in the Nerzinger case were made in the discussion of the defendant's contention that an instruction given by the trial court defining the term reasonable doubt did not properly define it.

In the instant case the State's instruction numbered 6, standing alone, is justly subject to the criticism that it does not specifically inform the jury that defendant should be acquitted unless his guilt is proved beyond a reasonable doubt. [State v. Douglas, supra.] But that is non-direction rather than mis-direction in that

instruction and the omission is supplied in other instructions. In Instruction 1 the jury is told that the facts hypothesized, upon which alone conviction can be based, must be found from the evidence beyond a reasonable doubt and that "unless you so find you will acquit said defendant." And in an instruction given at defendant's request the jury is told that the defendant is presumed to be innocent and the burden rests upon the State to establish his guilt beyond a reasonable doubt; and that: "If from all the evidence you believe the defendant guilty beyond a reasonable doubt it is your duty to convict him. If you do not so believe it is your duty to acquit him." Defendant asked no other instruction. Considered together, as they must be, the instructions sufficiently cover the subject of reasonable doubt.

We have discussed the decisions cited by appellant on this point because those decisions, particularly State v. Clark, supra, have been cited in other cases recently coming to this court as authority for the contention that the term "reasonable doubt" should be defined further or in some way different from the instruction usually given, which we quote above from the Nerzinger case. The statute does not enjoin that the court shall *define* reasonable doubt, but only that it shall instruct on that subject. State v. Clark, supra, does not hold that an instruction in the form above quoted and which was approved in the Nerzinger case would be insufficient, and if it did so hold it would be out of line with the decisions of this court both before and since it was written.

VI. Defendant urges that error was committed in the reception of the verdict and the fixing of the punishment by the court.

The case was submitted to the jury about the hour of 2:15 P. M. About 5:40 P. M., the jury not having reported, the court directed the sheriff to inquire of the jury if they had agreed upon a verdict. The jury directed the sheriff to inform the court that they had agreed upon the guilt of defendant, but could not agree upon the punishment and desired the court to assess the punishment. This message being reported to the court by the sheriff the court caused the jury to be brought into the court room, defendant being present, and there inquired of them if it was true that they had agreed upon the guilt of defendant but could not agree upon the punishment and desired the court to assess it. The foreman, speaking for the jury, answered that such was the fact. The court then further interrogated the jury and was assured by the members of that body that it was impossible for them to agree upon the punishment and that it would be useless for the court to allow further time for deliberation. Thereupon the court gave and read to the jury a further instruction to the effect that if the jury found defendant guilty but

could not agree upon his punishment a verdict so stating might be returned. The jury again retired to the jury room and presently returned in open court the following verdict: "We, the jury, find the defendant guilty as charged, but have failed and cannot agree upon his punishment. JOHN M. BRIGHT, Foreman." The verdict was received, the jury discharged and the court assessed defendant's punishment at two years' imprisonment in the penitentiary. After defendant's motion for new trial had been filed and overruled the court pronounced judgment in accordance with the verdict and the punishment so assessed.

Appellant relies upon Fooxe v. State, 7 Mo. 502, and State v. Gilbreath, 130 Mo. 500, 32 S. W. 1023, to support his contention that the action of the court was erroneous. Those cases were considered in State v. Hubbs, 294 Mo. 224, 242 S. W. 675. For the reasons there stated we think they do not support appellant's contention. This subject has recently been considered by this court in State v. Hubbs, supra, and in State v. Nave, 285 S. W. 723; State v. Levan, 306 Mo. 507, 267 S. W. 935, and State v. Schmittzehe, 3 S. W. (2d) 235, and it would serve no useful purpose to discuss it further. The decisions referred to dispose of this contention adversely to appellant.

There are some other alleged errors complained of in the motion for new trial, some of which are not sufficiently specified to bring them here for review and some of which are not stressed in the assignment of errors and brief. Such of them as merit discussion are included in the points hereinabove discussed. We find no reversible error in the record. The judgment is affirmed. *Davis* and *Henwood, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. *Blair, P. J.,* and *White, J.,* concur; *Walker, J.,* absent.