No. 43,255

STATE OF KANSAS, *Appellee*, v. HAROLD WAYNE BLOOD, *Appellant*.

(378 P. 2d 548)

Opinion filed January 26, 1963.

*David R. Gilman*, of Overland Park, argued the cause and was on the brief for the appellant.

*Hugh H. Kreamer, County Attorney*, argued the cause, and *William M. Ferguson*, Attorney General, and *Robert Hoffman*, Assistant Attorney General, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is a criminal action in which appeal has been duly perfected from a conviction of grand larceny and burglary in the second degree. Conviction was based upon evidence of possession of stolen property by the appellant shortly after the theft.

The sole question presented on appeal is whether evidence admitted at the trial over the appellant's objection was in fact obtained by an unlawful search and seizure.

Sometime between the hours of 6:00 p. m., December 16, 1961, and 1:30 a. m., December 17, 1961, the Mann Automatic Transmission Company, Inc., in Johnson County, Kansas, was burglarized. Entry was gained by breaking a back window. Property stolen by reason of such entry consisted of blank checks bearing the transmission company's name, a check protector, and money belonging to said corporation. The money was taken by breaking open a cash drawer inside the premises.

The appellant, Harold Wayne Blood, and Bernie Herndon were charged with the crime. Blood was tried alone, and Herndon at the time of trial was in the Missouri State Penitentiary.

At approximately 1:30 a. m. on December 17, 1961, Trooper Price of the Missouri State Highway Patrol was on duty near Harrisonville in Cass County, Missouri. While on regular patrol he received a dispatch from the Lee's Summit radio on a 1954 Oldsmobile bearing license No. CP-2907. The dispatch gave the description of the automobile; said that it was leaving the junction of 150 and 71 bypass; and that the occupants had stolen a watch from a service station at the junction.

Approximately five minutes after Trooper Price received this radio dispatch he stopped the vehicle described. It was bearing a Missouri registration tag. Upon asking the appellant, who was driving the vehicle, for a registration certificate on the vehicle, he produced a Kansas registration certificate from his wallet.

The occupants of the automobile were the appellant, Herndon, and a sixteen-year-old boy by the name of Robert Ray Smith. Upon questioning they denied any knowledge concerning a stolen watch, and at the trooper's direction they drove back to the service station at the junction described, where they parked partially on the shoulder of the highway leading into the service station.

Upon further questioning by Trooper Price at the service station Herndon produced the watch. He had it on his arm at the time.

Trooper Meyer of the Missouri State Highway Patrol met Trooper Price at this location.

As a result of questioning it was ascertained that the appellant owned the vehicle. Upon investigation it was disclosed the Missouri license plate on the vehicle was issued to a Jane Draper of Kansas City, Missouri. Trooper Meyer looked into the automobile from the outside using a flashlight and saw several credit cards lying on the front seat and several on the floor board on the right-hand side. He also observed a green metal box behind the left front seat. After seeing these things he questioned the appellant and Herndon about them. The appellant stated he did not know where they came from, and that they did not belong to him. Herndon likewise denied any knowledge about these items. Trooper Meyer then testified:

"Q. All right. Then what did you do with reference to this defendant and the other two men?

"A. We placed them all under arrest at that time and searched the car."

As a result of the search the appellant's Kansas license registration tag was found in the trunk of the automobile. Blank check forms bearing the Mann Automatic Transmission Company name

were found in a coat pocket lying on the rear seat; a check protector was found inside the green metal box which had been observed from outside the vehicle; and the credit cards seen from the outside of the vehicle, numbering eighteen in all, were identified as credit cards of the Commercial Cartage Company in Kansas City, Missouri. The coat on the back seat was ascertained to belong to the appellant.

Investigation early on the morning of December 17, 1961, disclosed the blank checks and the check protector to have been taken from the Mann Automatic Transmission Company, Inc., which had been burglarized in Johnson County, Kansas, and the credit cards to have been taken from the Commercial Cartage Company in Kansas City, Missouri, which had also been burglarized during the night.

Trooper Meyer testified that he arrested the appellant actually on two charges—"on investigation of theft for the watch and also for a stolen license plate on the car."

At the time of the arrest both the appellant and Herndon stated the items which had been seen through the window did not belong to either of them. When Trooper Meyer opened the green box which had been seen through the window of the automobile he said "I had reasons to believe that possibly there was stolen—;" that he was not just fishing, because he saw the credit cards lying in the car, and the explanation given by the appellant gave him reason to believe the credit cards and the contents of the green metal box had been stolen.

At no time did either of the troopers arrest the appellant for possession of stolen property.

Counsel for the appellant moved the trial court to suppress the testimony of Trooper Meyer before it was given on the ground that it was obtained by an illegal search of the appellant's automobile. Counsel for the appellant also moved to suppress the evidence "of anything that the police officer testified to in the trunk of the car or in the box," after the testimony was in, for the reason that it violated his constitutional rights. These motions were overruled by the trial court without giving any reason. The foregoing question was reserved by proper objections and motions throughout the trial and is properly presented on appeal.

Our task on appeal is to determine if the evidence was admissible under any theory of the law, consistent with the ruling of the trial court that the evidence was admissible on constitutional grounds.

The decision of the trial court in favor of the state on this point necessarily encompassed a general finding on the facts in favor of the state. The facts heretofore stated have therefore been given in accordance with the state's evidence. (See, *Davis v. United States* [1946], 328 U. S. 582, 90 L. Ed. 1453, 66 S. Ct. 1256.)

The appellant first contends the highway patrol officers lost the ordinary peace officers' power of search and seizure when the appellant's automobile left the highway and stopped on the ramp of the service station. The provisions of R. S. Mo. 43,200, as amended, read:

"1. The members of the patrol shall not have the right or power of search nor shall they have the right or power of seizure except to take from any person under arrest or about to be arrested deadly or dangerous weapons in the possession of such person, and except that the members of the patrol shall have the power of search and seizure on a public highway of this state."

Prior to 1959 the wording of this statute did not include the last exception which now gives highway patrol officers the power of search and seizure on public highways of the state of Missouri. No cases have been cited on this point by the appellant except *State v. Jones* [1948], 358 Mo. 398, 214 S. W. 2d 705, which was decided before the amendment.

The appellant's contention on this point is without merit. The appellant was originally stopped on a Missouri highway as a result of a radio dispatch describing the vehicle and informing the troopers that an occupant of the vehicle had stolen a watch. The appellant was thereupon directed to return to the service station located on the highway, after it had been ascertained that the registration tag on his vehicle did not correspond with the registration certificate in his pocket. The fact that a portion or all of the appellant's vehicle may have been off the highway right of way when the subsequent events occurred is immaterial.

The appellant next contends:

"The protection of the Fourth Amendment [to the Federal Constitution] has to do with the right of a citizen to be secure in his private property. The 'search and seizure' herein, to be upheld, must of course, have been made subject to a lawful arrest. In addition, *the search must be bona fide for articles connected with the arrest.*"

The objects alleged to have been stolen in this case are: (1) A check protector of the Mann Transmission Company, Inc.; (2) blank check forms of the Mann Transmission Company, Inc.; and (3) an undetermined amount of cash of approximately $50. At the

time of apprehension the appellant had $41.64 on his person and Herndon had $69.27.

The Fourth Amendment to the Constitution of the United States reads:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The Missouri Constitution (Art. 1, § 15) and the Kansas Bill of Rights (§ 15) contain similar language.

The Kansas Supreme Court has consistently held heretofore that even though evidence was obtained in violation of this constitutional provision, it was nevertheless admissible. (*State v. Johnson,* 116 Kan. 58, 226 Pac. 245; *State v. Fiske,* 117 Kan. 69, 230 Pac. 88; *State v. Kelley,* 125 Kan. 805, 265 Pac. 1109; and others.)

The federal exclusionary rule announced in *Weeks v. United States* [1914], 232 U. S. 383, 58 L. Ed. 652, 34 S. Ct. 341, was extended to states by the decision in *Mapp v. Ohio* [June, 1961], 367 U. S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684. This case and others were discussed in *State v. Wood,* 190 Kan. 778, 378 P. 2d 536, decided this date. In *Mapp* the Fourth Amendment's right of privacy was declared enforceable against the states through the Due Process Clause of the Fourteenth Amendment, and was made enforceable against them by the same sanction of exclusion as is used against the Federal Government. Cases of the United States Supreme Court relating to unreasonable searches and seizures under the Fourth Amendment are therefore material in determining whether the exclusionary rule is applicable in a state prosecution.

While Kansas is now obligated to embark on a new course, the Supreme Court of Missouri apparently anticipated *Mapp* by thirty-seven years in *State v. Rebasti* [1924], 306 Mo. 336, 267 S. W. 858, and Missouri law presumably has developed consistent with *Mapp*.

Since the search and seizure concerning which complaint is made occurred in the state of Missouri, we shall look to the Missouri law to determine whether the evidence should have been suppressed. However, it must be determined in the light of *Mapp v. Ohio,* supra, and other federal decisions which now overshadow the law of the several states. Missouri cases have been accumulated in 29 U. Kan. City L. Rev. 242, by Professor John Scurlock, in an article entitled "Searches and Seizures in Missouri."

The Fourth Amendment to the Federal Constitution denounces only such searches or seizures as are unreasonable, and it has been construed in the light of what was deemed an unreasonable search and seizure when the constitution was adopted, and in a manner which was intended to conserve public interests as well as the interests and rights of the individual citizens. Under the common law, and agreeably to the Constitution, search may in many cases be legally made without a warrant. The Constitution does not forbid search, but it does forbid *unreasonable* search.

In *Carroll v. United States* [1925], 267 U. S. 132, 69 L. Ed. 543, 45 S. Ct. 280, it was said:

"On reason and authority the true rule is that if the search and seizure without a warrant are made upon probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid. The Fourth Amendment is to be construed in the light of what was deemed an unreasonable search and seizure when it was adopted, and in a manner which will conserve public interests as well as the interests and rights of individual citizens." (p. 149.)

A distinction is made between the search for and seizure of stolen or forfeited goods, or goods liable to duties and concealed to avoid the payment thereof, and a man's private books and papers for the purpose of obtaining information therein contained, or of using them as evidence against him. Laws which provide for the search and seizure of articles and things which it is unlawful for a person to have in his possession for the purpose of issue or disposition, such as counterfeit coin, lottery tickets, implements of gambling, etc., are not within the category of private books and papers. (*Carroll v. United States*, supra; *Davis v. United States* [1946], 328 U. S. 582, 90 L. Ed. 1453, 66 S. Ct. 1256; and *State v. Pigg* [1925], 312 Mo. 212, 278 S. W. 1030.)

The foregoing distinction was clarified by language in *Harris v. United States* [1947], 331 U. S. 145, 91 L. Ed. 1399, 67 S. Ct. 1098, as follows:

". . . This Court has frequently recognized the distinction between merely evidentiary materials, on the one hand, which may not be seized either under the authority of a search warrant or during the course of a search incident to arrest, and on the other hand, those objects which may validly be seized including the instrumentalities and means by which a crime is committed, the fruits of crime such as stolen property, weapons by which escape of the person arrested might be effected, and property the possession of which is a crime. . . ." (p. 154.)

A difference is recognized between a man's dwelling house and an automobile on the highway as indicated by the following language in *Carroll,* supra:

"We have made a somewhat extended reference to these statutes to show that the guaranty of freedom from unreasonable searches and seizures by the Fourth Amendment has been construed, practically since the beginning of the Government, as recognizing a necessary difference between a search of a store, dwelling house or other structure in respect of which a proper official warrant readily may be obtained, and a search of a ship, motor boat, wagon or automobile, for contraband goods, where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." (p. 153.)

*Carroll* was quoted and the arrest of a motorist on a highway without a warrant was discussed in *State v. Padgett* [1926], 316 Mo. 179, 289 S. W. 954.

It is fundamental that a search without a warrant is, within limits, permissible if incident to a lawful arrest. But if an arrest without a warrant is to support an incidental search, such arrest must be made with *probable cause.* Probable cause is said to exist if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed. (*Stacey v. Emery* [1878], 97 U. S. 642, 645, 24 L. Ed. 1035; *Director General v. Kastenbaum* [1923], 263 U. S. 25, 28, 68 L. Ed. 146, 44 S. Ct. 52; *Giordenello v. United States* [1958], 357 U. S. 480, 486, 2 L. Ed. 2d 1503, 78 S. Ct. 1245; *State v. Green* [Mo. 1956], 292 S. W. 2d 283; *State v. Edwards* [Mo. 1958], 317 S. W. 2d 441; and *State v. Wood,* supra.)

Where a lawful arrest is made and the person arrested is the driver or in control of an automobile, the automobile may be searched as an incident of the arrest. This includes the whole interior of the automobile and the trunk. (*State v. Jonas* [Mo. 1953], 260 S. W. 2d 3; and *State v. McNeece* [1927], 317 Mo. 304, 295 S. W. 737.) The keys may be taken from him to get into a locked trunk. (*State v. Howard* [1929], 324 Mo. 145, 23 S. W. 2d 11.) The search of the interior of the automobile and the seizure of evidence, if incident to a lawful arrest, is reasonable, and whatever is found upon his person or in his control, which it is unlawful for him to have, and which may be used to prove the offense, may be seized and held as evidence in the prosecution. (*State v. Edwards,* supra; *State v. Green,* supra; and see, *Weeks v. United States,* supra; and *Carroll v. United States,* supra.)

The seizure of stolen goods is authorized by the common law. (*Boyd v. United States* [1886], 116 U. S. 616, 29 L. Ed. 746, 6 S. Ct. 524.)

Summarizing the rules with which we are concerned in this case it may be said that without a warrant no search for evidence may be made of an automobile, unless there is probable cause on the part of the officer to believe that the automobile contains contraband or stolen property, or unless an arrest has been made upon probable cause, in which event the search must be incidental to the arrest. As to the former it was said in *Carroll,* "The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law." (pp. 158, 159.)

Turning now to the facts in the case at bar, it is apparent Trooper Price had reasonable grounds to stop the vehicle in question, and reasonable grounds to believe that a crime had been committed. After he stopped the automobile, he questioned the appellant, who was driving, concerning its registration and found that it was improperly registered. As to the registration it was apparent a misdemeanor had been committed in his presence. The record does not disclose whether the theft of the watch was a felony or a misdemeanor. As to this point the burden is upon the appellant to show error. Therefore, we shall assume that the offense was a felony.

For either of the foregoing offenses, a warrant to arrest the appellant was not necessary. After the appellant and his companions were returned to the scene of the watch theft, Trooper Meyer saw the credit cards through the window of the automobile with the assistance of a flashlight. It has been held that the eye cannot commit a trespass condemned by the Fourth Amendment. (See, *McDonald v. United States* [1948], 335 U. S. 451, 93 L. Ed. 153, 69 S. Ct. 191.) Observation of that which is in plain view is not a search. (*State v. Campbell* [Mo. 1953], 262 S. W. 2d 5; *State v. Hawkins* [1951], 362 Mo. 152, 240 S. W. 2d 688; and *State v. Harre* [Mo. 1955], 280 S. W. 2d 41.)

In *Ellison v. United States* [1953], 206 F. 2d 476, the United States Court of Appeals for the District of Columbia Circuit, said:

". . . Nor were they guilty of any impropriety in allowing their eyes to wander while they were waiting on the porch. The bottles and cigarettes were not covered or hidden, though it may have been necessary to bend over

the porch rail to see them. There was no intrusion into appellant's privacy. Nor did mere observation constitute a 'search.' If an officer sees the fruits of crime—or what he has good reason to believe to be the fruits of crime—lying freely exposed on a suspect's property, he is not required to look the other way, or disregard the evidence his senses bring him. Law enforcement is difficult enough, without requiring a police officer to free his mind of clues lying flatly before him." (p. 478.)

After Trooper Meyer observed the credit cards he asked the appellant and his companions about them, and they denied any knowledge of them even though clearly visible in the automobile. At this point the trooper had probable cause to believe the automobile contained stolen property. At this time the theft of the watch had been confirmed to the trooper, and the vehicle was bearing stolen license plates. (See, *Joe Bell Games, Inc. v. Wilson* [1959], 192 N. Y. S. 2d 465; *Ellison v. United States*, supra; and *State v. Padgett* [1926], 316 Mo. 179, 289 S. W. 954.) When an officer upon lawfully stopping an automobile on the highway perceives that it probably contains stolen property, he has the power to search it independently of the arrest, and there is no need to go through the formality of a rearrest.

An officer lawfully on the premises or in a public place can always seize property which is open to his view, if he has reasonable cause to believe it is being kept or used in violation of the law. (*Ellison v. United States*, supra.) There is no contention that the troopers were not officers or that they were not in a public place or lawfully on the premises where the search was made.

It must be recognized that vehicles are protected against unreasonable searches and seizures. (*State v. Cuezze* [Mo. 1952], 249 S. W. 2d 373; and *State v. Jones* [1948], 358 Mo. 398, 214 S. W. 2d 705.) But because of their mobility different standards of reasonableness are employed in judging whether the search of automobiles is lawful. (*State v. Pigg* [1925], 312 Mo. 212, 278 S. W. 1030.)

It is argued by the appellant the search of the automobile in the instant case was not made as an incident of a lawful arrest; that it was unnecessary to search the vehicle to find the stolen watch, since it had been produced. Assuming this to be correct for purposes of argument, the officers under the circumstances were still entitled to search the vehicle for weapons, and a Kansas license plate corresponding to the registration certificates produced by the appellant. The Kansas license plate registered to the appellant was subsequently found in the trunk during the search. Wholly inde-

pendent of the arrest, however, the officers had probable cause to search the vehicle for stolen property.

In *Harris v. United States* [1947], 331 U. S. 145, 91 L. Ed. 2d 1399, 67 S. Ct. 1098, the court emphasized that it was only unreasonable searches and seizures which come within the constitutional interdict; that the test of reasonableness could not be stated in rigid and absolute terms; and that each case was to be decided on its own facts and circumstances, citing *Go-Bart Co. v. United States* [1931], 282 U. S. 344, 357, 75 L. Ed. 374, 51 S. Ct. 153. In *Harris* a warrant had been issued for the petitioner's arrest charging violations of the Mail Fraud Statute and the National Stolen Property Act. Upon arrival at the petitioner's apartment he was arrested in the living room, and without a search warrant an intensive search followed for two canceled checks and other means by which the crimes charged might have been committed. In the course of this search a sealed envelope, marked "personal papers" of the accused was found and torn open. It contained several draft cards which were property of the United States, and the possession of which was a federal offense. Thus, an arrest for one felony which was followed by a search, produced evidence of another felony. It was held that the evidence found in the search was not obtained in violation of the provisions of the Fourth Amendment against unreasonable searches and seizures, nor did its use violate the privilege of the accused against self-incrimination under the Fifth Amendment. In the opinion the court said:

". . . Nothing in the decisions of this Court gives support to the suggestion that under such circumstances the law-enforcement officials must impotently stand aside and refrain from seizing such contraband material. If entry upon the premises be authorized and the search which follows be valid, there is nothing in the Fourth Amendment which inhibits the seizure by law-enforcement agents of government property the possession of which is a crime, even though the officers are not aware that such property is on the premises when the search is initiated." (p. 155.)

The state of Missouri has similar decisions. In *State v. Padgett* [1926], 316 Mo. 179, 289 S. W. 954, a motorist was arrested for reckless driving, and in arresting the motorist for such misdemeanor the officer discovered the presence of other things which disclosed the motorist was also in the act of committing a felony. The court held the officer was authorized without a warrant to make the arrest, and to hold the motorist for the felony; further, that the evidence seized was admissible.

In *State v. Howard* [1929], 324 Mo. 145, 23 S. W. 2d 11, an officer made an arrest of a motorist on a public highway without a warrant upon probable cause that the person arrested had committed a felony. Following the arrest a search disclosed evidence tending to show that the person arrested was guilty of another felony. Upon trial for the second felony it was held the evidence could not be suppressed as having been obtained by an unreasonable search and seizure. (See, also, *Gray v. State* [1943], 243 Wis. 57, 9 N. W. 2d 68; and 1959 Wis. L. Rev. 347, "Search and Seizure—Search Incident to Arrest for Traffic Violation.")

We hold under all of the facts, conditions and circumstances disclosed by the record herein that the Missouri Highway Patrol Officers had probable cause to search the vehicle in question on the ground that it contained stolen property, part of which was in plain view prior to any search having been conducted. Thus, the trial court did not err in refusing to suppress the evidence which the appellant contends was seized unlawfully and in derogation of his constitutional rights, and in overruling the appellant's motion for a new trial.

The judgment of the lower court is affirmed.