No. 46,537

STATE OF KANSAS, *Appellee*, v. WILLIAM LASLEY, *Appellant*.

(496 P. 2d 1398)

Opinion filed May 6, 1972.

R. *Edgar Johnson*, of Junction City, argued the cause and was on the brief for the appellant.

*John H. Taylor*, county attorney, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

FOTH, C.: Defendant was convicted of first degree robbery and he appeals. His sole contention is that certain evidence admitted at his trial was acquired as the result of an illegal search and seizure and should have been suppressed on his pre-trial motion.

The state justifies the search and seizure as being incidental to a lawful arrest. Defendant counters by alleging that the arresting officer lacked probable cause to make the arrest, and this is the issue on which the case turns.

On June 6, 1970, shortly before 12:30 p. m. an attendant at John's Derby Station, located at Eisenhower Drive and Whitney Road in Junction City, Kansas, was robbed at gunpoint. After taking a billfold containing the station's cash the robber forced the attendant to walk south on Eisenhower with him for a half a block, and then sent him back to the station. The robber was last seen walking south on Eisenhower. The attendant called the police who arrived shortly thereafter. A description of the robber was promptly broadcast over the police radio.

Sergeant Richard L. Arnold of the Junction City Police Department had been having lunch at home and had just returned to duty

in his patrol car at 12:28 when he overheard the radio traffic regarding the robbery. He testified:

". . . The suspect was described as a large, Caucasian male, over six feet tall and weighing approximately 240 pounds, with black, curly hair, graying on the sides, wearing a white T-shirt and dark trousers, last seen walking on foot south on Eisenhower Drive."

In an affidavit for a search warrant not material here he stated that the suspect's age was also given, as about forty years old.

With this information in mind Sergeant Arnold proceeded to Eisenhower and turned south to the first street going west. There, about five or six minutes after the robbery and about eight-tenths of a mile from the scene, he observed a car with California plates turning around and heading away from him. It lacked the Fort Riley bumper decal presumably seen on most out-of-state cars in Junction City. He followed the car to the edge of town and until it turned onto the highway, at which time he was able to see that the driver might fit the description of the robber. At this point he turned on his red lights, the car pulled over, and he asked the driver to step out.

He was confronted with: a large Caucasian male; over six feet tall; weighing approximately 240 pounds; with black, curly hair graying on the sides; wearing a white T-shirt and green trousers—the defendant!

Sergeant Arnold ordered the defendant into the usual spread eagle against his car and called for help. Two officers arrived who, on Sergeant Arnold's instructions, advised defendant that he was under arrest for armed robbery. The search complained of followed. One officer found the billfold and money taken in the robbery on defendant's person; Sergeant Arnold found a loaded pistol and a box of shells under the front seat of defendant's car. All these items were the object of defendant's unsuccessful motion to suppress and all were admitted into evidence at his trial over his objection.

Did Sergeant Arnold act unlawfully in making the arrest and subsequent search? We have recently said:

". . . An arrest without a warrant to support an incidental search must be made with probable cause. Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that a felony has been or is being committed by the person to be arrested. (*State v. Hart*, 200 Kan. 153, 434 P. 2d 999; *State v. Brown*, 198 Kan. 473, 426 P. 2d 129; *State v. Hunt*, 198 Kan. 222, 424 P. 2d 571; *State v. Blood*, 190 Kan. 812,

378 P. 2d 548; *State v. Wood,* 190 Kan. 778, 378 P. 2d 536; 5 Am. Jur. 2d, Arrest, § 25; 6 C. J. S., Arrest, § 6b.)" (*State v. Little,* 201 Kan. 94, 96, 439 P. 2d 387.)

This is in accord with the federal cases under the Fourth Amendment. See, *e. g., Beck v. Ohio,* 379 U. S. 89, 13 L. Ed. 2d 142, 85 S. Ct. 223.

We have also said (*State v. Boyle,* 207 Kan. 833, 838, 486 P. 2d 849):

"The quantum of information which constitutes probable cause—evidence which would warrant a man of reasonable caution in the belief that a felony has been committed—must be measured by the facts of the particular case. (*Carroll v. United States,* 267 U. S. 132, 69 L. Ed. 543, 45 S. Ct. 280, 39 A. L. R. 790.)"

We must therefore put our prudent man in Sergeant Arnold's shoes when the defendant got out of his car. Should he arrest the subject standing before him? The subject fit a rather detailed description to a "T," was in the general locale of the reported robbery minutes after it happened, in a "foreign" car, and was heading away from the scene. Had the Sergeant *failed* to make an arrest he would, in our view, have been derelict in his duty. True, the subject was wearing glasses while the description mentioned none, and true, he was driving a car while the robber fled the immediate scene on foot. Neither of these details, to our mind, detract significantly from the totality of circumstances which would lead *any* prudent person to believe that, in all probability, the defendant was the robber. Although each case must turn on its own facts, Sergeant Arnold had far more to go on than the arresting officers in *Chambers v. Maroney,* 399 U. S. 42, 26 L. Ed 2d 419, 90 S. Ct. 1975, or *State v. Kelly,* 203 Kan. 360, 454 P. 2d 501.

Defendant concedes that if there was probable cause to arrest him the search and seizure were valid. Since we find abundant evidence of probable cause, the judgment is affirmed.

APPROVED BY THE COURT.